Michael J. Stortz (139386)
Michael.Stortz@klgates.com
Tae H. Kim (331362)
Tae.Kim@klgates.com
K. Taylor Yamahata (347192)
Taylor.Yamahata@klgates.com
K&L GATES LLP
Four Embarcadero Center
Suite 1200
San Francisco, California 94111
Telephone: +1 415 882 8200
Facsimile: +1 415 882 8220

Attorneys for Defendants EDWARD D. JONES
& CO., L.P. and THE JONES FINANCIAL
COMPANIES, L.L.L.P.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| MARK MAURER, THERESA STEVENS, RICHARD MORTENSEN, CHRIS WALL, AND DENNIS FRASHER individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EDWARD D. JONES & CO., L.P, and THE JONES FINANCIAL COMPANIES, L.L.L.P.,<br><br>Defendants. | Case No. 3:26-cv-01178<br><br>*Assigned for all purposes to Honorable James Donato*<br><br>**DEFENDANTS' OPPOSITION TO MOTION TO CONSOLIDATE CASES AND APPOINT INTERIM CO-LEAD COUNSEL**<br><br>Date:      April 16, 2026<br>Time:      10:00 a.m.<br>Location:  Courtroom 11 – 19th Floor<br>Judge:     Hon. James Donato |

1608314488.1

DEFENDANTS' OPPOSITION TO MOTION TO CONSOLIDATE AND APPOINT INTERIM CO-LEAD
COUNSEL; CASE NO. 3:26-CV-01178

## TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................................1

II.  STATEMENT OF ISSUES TO BE DECIDED ...................................................................2

III.  BACKGROUND .....................................................................................................................2

IV.  ARGUMENT ...........................................................................................................................4

    A.  Consolidation Is Inappropriate Because the *Maurer* and *Shah* Actions Do Not Involve Common Questions of Law or Fact......................................................4

    B.  Consolidating the Actions Would Be Premature and Risks Delay, Confusion and Prejudice .................................................................................................9

    C.  Plaintiffs' Request for Appointment of Interim Co-Lead Counsel Is Premature and Unnecessary ...............................................................................10

V.  CONCLUSION .....................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple Data Priv. Litig.*,
No. 5:22-CV-07069-EJD, 2026 WL 146025 (N.D. Cal. Jan. 20, 2026) .................................. 8

*Bakalar v. Dunleavy*,
No. 3:19-CV-00025 JWS, 2019 WL 1781402 (D. Alaska Apr. 22, 2019) ............................. 4

*Bielski v. Coinbase, Inc.*,
No. C 21-07478 WHA, 2022 WL 17650535 (N.D. Cal. Dec. 13, 2022) ................................ 10

*Burrow v. Forjas Taurus S.A.*,
No. 16-CIV-21606, 2018 WL 809439 (S.D. Fla. Feb. 9, 2018) ................................................ 4

*Cribier v. Compass, Inc.*,
2025 WL 1939869 (N.D. Cal. July 14, 2025) .......................................................................... 2

*Evans v. BBG Commc'ns, Inc.*,
No. 10-CV-542-H (NLS), 2011 WL 13177329 (S.D. Cal. Feb. 25, 2011) ............................ 5

*Imran v. Vital Pharms., Inc.*,
No. 18-CV-05758-JST, 2019 WL 1509180 (N.D. Cal. Apr. 5, 2019) ................................... 11

*K.L. v. Legacy Health*,
No. 3:23-CV-1886-SI, 2024 WL 4794657 (D. Or. Nov. 14, 2024) .................................... 5, 6

*McHenry v. Jordan*,
81 F.3d 169 (9th Cir. 1996), *as amended on denial of reh'g* (May 30, 1996) ......................... 9

*Nazemian v. NVIDIA Corp.*,
No. 24-CV-01454-JST, 2025 WL 2259005 (N.D. Cal. Aug. 7, 2025) ........................... 11, 12

*In re Nest Labs Litig.*,
No. 14-CV-01363-BLF, 2014 WL 12878556 (N.D. Cal. Aug. 18, 2014) .............................. 11

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) ........................................................................... 5, 6

*In re OpenAI ChatGPT Litig.*,
No. 23-CV-03223-AMO, 2024 WL 1834368 (N.D. Cal. Apr. 26, 2024) .............................. 11

*In re Repetitive Stress Injury Litig.*,
11 F.3d 368 (2d Cir. 1993) ...................................................................................................... 4

*In re Roundup Prod. Liab. Litig.*,
No. 16-MD-02741-VC, 2020 WL 1983256 (N.D. Cal. Apr. 27, 2020) ............................... 10

1608314488.1

ii

*Rumbo Perez v. Espinoza*,
　No. EDCV192190JGBSPX, 2020 WL 2095804 (C.D. Cal. Jan. 21, 2020) ............................ 9

*Sajfr v. BBG Commc'ns, Inc.*,
　No. 10-CV-2341-H NLS, 2011 WL 765884 (S.D. Cal. Feb. 25, 2011) .................................. 5

*In re Seagate Tech. LLC Litig.*,
　No. 16-CV-00523-RMW, 2016 WL 3401989 (N.D. Cal. June 21, 2016)....................... 11, 12

*Smith v. Aon Corp.*,
　238 F.R.D. 609 (N.D. Ill. 2006) ........................................................................................ 11

*Turner v. Murphy Oil USA, Inc.*,
　234 F.R.D. 597 (E.D. La. 2006)......................................................................................... 11

*Zhu v. UCBH Holdings, Inc.*,
　682 F.Supp.2d 1049 (N.D. Cal. 2010) ............................................................................. 4, 9

**Statutes**

California Invasion of Privacy Act, Cal. Penal Code § 631................................................... 8

California Invasion of Privacy Act, Cal. Penal Code § 632................................................... 8

Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502 ............................ 8

Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.* ............................................. 8

Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*............................................. 8

**Other Authorities**

Cal. Constitution Art. I, § 1................................................................................................ 8

Fed. R. Civ. P. 23 ............................................................................................................. 10

Fed. R. Civ. P. 23(g)(3)................................................................................................. 2, 10

Fed. R. Civ. P. 42 ............................................................................................................... 9

Fed. R. Civ. P. 42(a)..................................................................................................... *passim*

Defendants Edward D. Jones & Co., L.P. ("Edward Jones") and The Jones Financial Companies, L.L.L.P. (collectively, "Defendants") hereby submit this opposition to Plaintiffs' Motion to Consolidate Cases and Appoint Interim Co-Lead Counsel ("Motion"). For the reasons stated herein, the Motion should be denied.

## I.      INTRODUCTION

Plaintiffs Mark Maurer, Theresa Stevens, Richard Mortensen, Chris Wall, Dennis Frasher, and Vishal Shah (collectively, "Plaintiffs") seek to consolidate *Maurer, et al. v. Edward D. Jones & Co., L.P. et al.*, No. 3:26-cv-01178-JD (N.D. Cal.) (the "*Maurer* Action") and *Shah v. Edward D. Jones & Co., L.P.*, No. 3:26-cv-01750 (N.D. Cal.) (the "*Shah* Action"), arguing that the two cases assert "common causes of action seeking similar relief against the same defendant, Edward Jones, arising from overlapping conduct." Dkt. No. 22 at 3:26-27. Plaintiffs further argue that appointing interim co-lead counsel is "appropriate in situations, such as this, where overlapping class suits are pending." *Id.* at 5:8-9.

Plaintiffs' arguments collapse under scrutiny of the distinct claims and factual allegations set forth in their respective complaints. While the two lawsuits present one shared defendant and partially overlapping statutory claims, that falls far short of meeting Rule 42(a)'s requirements. Consolidation requires cases to share questions of law or fact *central* to their resolution, and these two actions do not. The substantial differences between the actions confirm that consolidation would complicate, rather than streamline, this litigation, creating real risks of delay, confusion, and prejudice.

Plaintiffs' motion also is premature, as it ignores the substantial jurisdictional, contractual and venue restrictions that require resolution of their claims in fora other than this District. Of the six Plaintiffs in the two actions, original Plaintiff Maurer has no account with Defendants, and asserts no claim with any nexus to this District; as such, the Court lacks personal jurisdiction over Defendants as to his putative claims. As for the newly added four California Plaintiffs in *Maurer*, the claims of two have no nexus to this District that would support venue here; and all four have flouted the forum selection clause in their operative account agreements, pursuant to which they agreed to resolve their disputes with Defendants in federal and state courts located in the Eastern

1608314488.1

1

District of Missouri. As for Plaintiff Shah, he originally filed his suit in the Central District of California, and he has no connection with this District. *See, e.g., Cribier v. Compass, Inc.*, 2025 WL 1939869, **4-5 (N.D. Cal. July 14, 2025) (plaintiff residing in Southern California could not establish venue under Section 1391(b) over out-of-state corporate defendant, since plaintiff's claims lacked "substantial 'nexus' with the Northern District of California"). Further, Shah dismissed his original suit with prejudice. Since no Plaintiff will be proceeding in this District, consolidation at this time is premature, and Plaintiffs' Motion should be denied.

Plaintiffs' request to appoint interim co-lead and liaison counsel fares no better. Appointment is premature because consolidation is itself unwarranted. An appointment order also is unnecessary because Plaintiffs' counsel have already "self-organized" and established a cooperative working arrangement. Further, since neither of the cases is likely to proceed in this District, there is no need to create a leadership or liaison counsel for cases that will be litigated outside this District, if at all. Plaintiffs' request to appoint lead and liaison counsel should be denied.

## II.     STATEMENT OF ISSUES TO BE DECIDED

1.     Whether the *Maurer* and *Shah* Actions share sufficient common questions of law or fact to warrant consolidation under Federal Rule of Civil Procedure 42(a).

2.     Whether consolidation should be denied because it would create unwarranted delay, confusion, and prejudice given the independent jurisdictional, venue, and procedural deficiencies that threaten the viability of each action in this District.

3.     Whether appointment of interim co-lead and liaison counsel under Federal Rule of Civil Procedure 23(g)(3) is premature and unnecessary.

## III.    BACKGROUND

On February 6, 2026, Plaintiff Mark Maurer, a New York resident, filed a putative class action Complaint against Defendants in this District. At their core, the allegations in the *Maurer* Action concern existing Edward Jones accountholders who accessed their account information through a password-protected online portal, where Defendants allegedly used third-party software technologies to record and transmit customers' private information to third parties. Dkt. No. 1. Following an initial meet and confer, where Defendants explained there is no record of Plaintiff

Maurer ever maintaining an account, Plaintiff Maurer amended the Complaint on February 20, 2026 ("*Maurer* Amended Complaint"), adding four new California-based Plaintiffs ("California Plaintiffs"), only two of whom allegedly reside in this District. Dkt. No. 16. Each of the California Plaintiffs is alleged to be a long-time Edward Jones accountholder with an account relationship dating back years and even decades. Further, each California Plaintiff allegedly accessed the password-protected online portal on the Edward Jones website using personal credentials "to review[ ] his [or her] transactions and account balances." Dkt. No. 16 at ¶¶ 25, 31, 37, 43, 49.

On February 18, 2026, Plaintiff Vishal Shah filed a separate putative class action complaint in the Central District of California against Defendant Edward Jones. Unlike the *Maurer* Plaintiffs, Plaintiff Shah does not allege that he was an existing Edward Jones accountholder or that he accessed any password-protected account information. Instead, he alleges a single visit to Edward Jones's publicly available financial advisor matching pages as a prospective customer, during which he happened to be using the same device and web browser he also used to access his LinkedIn account. Dkt. No. 23-1, Ex. A at ¶¶ 5-7. He further alleges that, during that visit, Edward Jones used the LinkedIn Insight Tag to transmit his quiz responses to LinkedIn. *Id.*

On February 27, 2026, the day after the action was assigned to District Judge Fred Slaughter, Plaintiff Shah voluntarily dismissed his Central District claims "with prejudice" and filed a new complaint in this District ("*Shah* Complaint"). *Id.*, Exs. B, C. The *Shah* Complaint is otherwise identical to its predecessor—same plaintiff, same residence in Buena Park, California, same underlying facts—except that Plaintiff Shah now alleges a significant portion of the operative events somehow occurred in this District, contrary to his original allegations made in the Central District. As Plaintiff Shah's original Central District filing alleged without qualification that the operative events occurred there, his two competing venue allegations cannot be reconciled, any more than can his re-filing of claims he previously dismissed with prejudice. *See* Dkt. No. 23.

Notwithstanding their otherwise distinct factual foundations, the two actions appear—at least superficially—to share one purported point of overlap. The *Maurer* Plaintiffs allege in passing that the third-party software technologies at issue appear on "all pages of the Edward Jones websites, including the pages to find a financial advisor, research Edward Jones' investment

1608314488.1

3

services, and take a survey to match with financial advisors." Dkt. No. 16 at ¶ 9. Those presumably are the same financial advisor matching pages and the associated survey that form the factual basis of the *Shah* Action. Remarkably, however, not one of the *Maurer* Plaintiffs alleges that he or she ever used the "find a financial advisor" tool, took the advisor-matching survey, or visited the financial advisor matching pages in any capacity. Nor would they have any cause to do so. As long-time accountholders with designated financial advisors, each *Maurer* Plaintiff visited the Edward Jones websites allegedly with one purpose: to log into accounts they already had and "review[ ] his [or her] transactions and account balances." *Id.* at ¶¶ 25, 31, 37, 43, 49. The "find a financial advisor" tool is designed for first-time website visitors seeking to identify an advisor—a category that does not describe any of the *Maurer* Plaintiffs.

On March 9, 2026, Defendants filed their Opposition to Plaintiffs' Motion to Relate, which remains pending before the Court. Defendants now oppose Plaintiffs' Motion filed on March 6, 2026.

## IV. ARGUMENT

### A. Consolidation Is Inappropriate Because the *Maurer* and *Shah* Actions Do Not Involve Common Questions of Law or Fact

Under Rule 42(a) of the Federal Rules of Civil Procedure, consolidation of separate actions is permissible only "[i]f actions before the court involve a common question of law or fact." Fed. R. Civ. P. 42(a). The party seeking consolidation "must bear the burden of showing the commonality of factual and legal issues in different actions." *In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373 (2d Cir. 1993); *Bakalar v. Dunleavy*, No. 3:19-CV-00025 JWS, 2019 WL 1781402, at *1 (D. Alaska Apr. 22, 2019). Even where some common question exists, consolidation remains discretionary, and courts must weigh the interest of judicial convenience against the potential for delay, confusion, and prejudice. *See Burrow v. Forjas Taurus S.A.*, No. 16-CIV-21606, 2018 WL 809439, at *7 (S.D. Fla. Feb. 9, 2018); *Zhu v. UCBH Holdings, Inc.*, 682 F.Supp.2d 1049, 1052 (N.D. Cal. 2010). Although the court has authority to consolidate cases in the interest of the parties and for the benefit of judicial efficiency, consolidation should be denied where common issues are not "central to the resolution of the cases . . . or if consolidation will lead to confusion or

1608314488.1

4

prejudice in the effective management or trial of one or more of the cases." *Sajfr v. BBG Commc'ns, Inc.*, No. 10-CV-2341-H NLS, 2011 WL 765884, at *2 (S.D. Cal. Feb. 25, 2011).

The threshold question under Rule 42(a) is not whether two cases bear a surface resemblance, but whether they share common questions of law or fact that are "central to the[ir] resolution." *Sajfr*, 2011 WL 765884, at *2; *Evans v. BBG Commc'ns, Inc.*, No. 10-CV-542-H (NLS), 2011 WL 13177329, at *2 (S.D. Cal. Feb. 25, 2011). That standard is not approached here. A comparison of the two Complaints reveals that the *Maurer* and *Shah* Actions are materially different in multiple respects.

*First*, the *Maurer* and *Shah* Actions involve fundamentally different parties, conduct, and transactions. The *Maurer* Action centers on alleged conduct occurring in connection with access to Edward Jones's password-protected online portal by accountholders.[1] The *Maurer* Plaintiffs allege that, as customers, they accessed a password-protected online portal to review account information, such as balances and transaction history, with the understanding that their communications were private and confined to Defendants. Dkt. No. 16 at ¶¶ 6, 8. The gravamen of the *Maurer* Complaint is that Defendants nevertheless permitted those communications to be recorded and transmitted to third parties, including Google, Meta, Trade Desk, LinkedIn, and ClickTale. *Id.* at ¶¶ 7, 26. Their claims thus turn on their status as accountholders and access to Defendants' online accountholder portal. *See K.L. v. Legacy Health*, No. 3:23-CV-1886-SI, 2024 WL 4794657, at *4 (D. Or. Nov. 14, 2024) ("Because the Court sees a meaningful difference between searches conducted on a website accessible to anyone and a private portal provided to an individual patient, the Court separately analyzes Plaintiff's claims with respect to the Public Website and the Patient Portal."); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1082 (W.D. Wash. 2024) ("Thus,

---

[1] Although Plaintiff Maurer contends he "opened an account with Edward Jones," Dkt. No. 1 at ¶¶ 22-24, Defendants have not found any record of him ever being a customer, and he has provided none. Moreover, Plaintiff Maurer is a New York resident, Defendants are Missouri entities, and the allegations do not establish any meaningful connection between his claims and this District. Accordingly, Plaintiff Maurer's claims are subject to dismissal for lack of personal jurisdiction and improper venue. *See* Dkt. 23.

1608314488.1

5

whether the allegations concern Defendant's Public Website or Private Patient Portal may make a significant difference").

The *Shah* Action bears no resemblance to that factual framework. Plaintiff Shah does not allege that he was ever an Edward Jones customer, accountholder, or portal user. Instead, he alleges that, as a prospective customer, he visited the public Edward Jones website in or around October 2025 to be matched with a financial advisor, completed an online quiz, and entered information using the same device and browser he used to access his LinkedIn account. Dkt. No. 23-1, Ex. C at ¶¶ 5, 6. He alleges that, as a result, certain personally identifiable information—including his investments; age; anticipated retirement timeline; amount to invest; sources and level of household income; and special considerations used to match him with an advisor, such as LGBTQ+ identification or veteran status—was transmitted to LinkedIn. *Id.* at ¶¶ 54-67. Plaintiff Shah never alleges he logged into a password-protected portal, maintained an account with Defendants, or had transaction data, account balances, or account numbers capable of being transmitted to third parties. Litigating the *Maurer* Action requires analyzing an ongoing customer relationship and the disclosure of Edward Jones account details. The *Shah* Action, on the other hand, involves none of those facts. *See K.L.*, 2024 WL 4794657, at *4; *Nienaber*, 733 F. Supp. 3d at 1082.

*Second*, the two actions further diverge in the software technologies at issue and the third parties alleged to have received data. The *Maurer* Action is anchored in the deployment of multiple, distinct software technologies across Defendants' website and password-protected online portal. The *Maurer* Complaint alleges that Defendants embedded a suite of third-party software technologies into authenticated customer environments. Dkt. No. 16 at ¶¶ 68-102. Through these technologies, Defendants allegedly enabled multiple third parties to record and receive customers' online communications and activity *Id.* at ¶¶ 89, 94, 97-99, 109. The *Maurer* Action thus presents a multi-technology, multi-recipient theory in which different tools operate in different ways and address different categories of data.

The *Shah* Action, by contrast, concerns a single software tool and a single third-party recipient. Specifically, Plaintiff Shah alleges that Edward Jones used the LinkedIn Insight Tag on its "financial advisor matching pages" and that, as he progressed through the advisor-matching

quiz, his responses were contemporaneously transmitted to LinkedIn through that tag. Dkt. No. 23-1, Ex. C at ¶¶ 3, 29, 55. The case turns on the specific information allegedly disclosed via the LinkedIn Insight Tag, including quiz responses and associated identifiers, and the asserted linkage of that information to Plaintiff Shah's LinkedIn account based on his use of the same device and browser. A *Maurer* Plaintiff whose data allegedly was captured by Google, Meta, the Trade Desk, or ClickTale, and who may not have had a LinkedIn account at all, does not share that factual predicate.

*Third*, the two sets of Plaintiffs face entirely different venue obligations that confirm their claims cannot and should not be adjudicated together. The California Plaintiffs in the *Maurer* Action are existing Edward Jones accountholders who agreed, through the operative terms of their account agreements, to resolve disputes with Defendants exclusively in the Circuit Court of St. Louis County, State of Missouri, or the United States District Court for the Eastern District of Missouri. Plaintiff Shah, on the other hand, has never maintained an account with Edward Jones and thus has never executed any comparable client account agreement.

Moreover, the *Shah* Action presents a distinct and independent threshold venue problem: Plaintiff Shah originally filed his suit in the Central District of California, affirmatively alleged the operative events occurred there, voluntarily dismissed those claims *with* prejudice, and re-filed in this District with irreconcilable venue allegations. Whether this Court is the proper venue for the *Shah* Action thus remains an open and independently pressing threshold question presenting unique procedural issues arising from the prior dismissal with prejudice. These divergent venue and jurisdictional issues would require separate and case-specific briefing entirely distinct from the venue issues presented by the *Maurer* Action, further confirming that consolidation would complicate rather than simplify this litigation.

*Fourth*, the proposed classes are defined differently and diverge in their membership criteria. The *Maurer* Amended Complaint defines a nationwide class and a parallel California sub-class encompassing all persons who used the domains "https://www.edwardjones.com/" and "https://onlineaccess.edwardjones.com" and whose communications were allegedly disclosed to third parties through any of the multiple software technologies at issue, regardless of customer

1608314488.1

7

status or the particular third party involved. Dkt. No. 16 at ¶ 164. The *Shah* Complaint, by contrast, defines its classes far more narrowly, limiting membership to individuals who both entered information on the "https://www.edwardjones.com/" domain and maintained a LinkedIn account— a threshold requirement absent from the *Maurer* Action and central to *Shah*'s theory of harm. Dkt. No. 23-1, Ex. C at ¶ 72. As a result, individuals whose data was allegedly captured by other third parties, or who lacked a LinkedIn account altogether, could fall within the *Maurer* class but not qualify as *Shah* class members. These distinctions are not mere semantics but reflect fundamentally different factual allegations and different proposed class parameters.

*Fifth*, the legal claims and theories of liability diverge in material respects. *Maurer* Plaintiffs assert nine causes of action, including claims under the Electronic Communications Privacy Act ("ECPA"), California Invasion of Privacy Act ("CIPA") § 631, intrusion upon seclusion, invasion of privacy under the California Constitution, Cal. Bus, & Prof. §§ 17200, *et seq.* ("UCL"), Cal. Pen. Code § 502 ("CDAFA"), negligence, and unjust enrichment. Dkt. No. 16 at ¶ 14. The *Shah* Complaint pleads only ECPA and CIPA claims under §§ 631 and 632. Dkt. No. 23-1, Ex. C at ¶ 4. The inclusion of CIPA § 632 in *Shah* and its absence from *Maurer* reflects a material difference in the statutory theories at issue. Adjudicating this claim requires a distinct inquiry into whether the financial advisor matching interaction constitutes a "confidential communication" and whether the LinkedIn Insight Tag qualifies as an "electronic amplifying or recording device" within the meaning of the statute—questions not presented in the *Maurer* Action. *See In re Apple Data Priv. Litig.*, No. 5:22-CV-07069-EJD, 2026 WL 146025, at *5 (N.D. Cal. Jan. 20, 2026) (analyzing a § 632 claim by assessing whether alleged interaction was a "confidential communication . . . us[ing] an electronic amplifying or recording device"). Conversely, the *Maurer* Action's CDAFA, negligence, intrusion-upon-seclusion, UCL, and constitutional privacy claims have no counterpart in the *Shah* Action.

*Sixth,* although carefully omitted from the Complaints in both actions, Plaintiffs were notified of Defendants' privacy practices, and consented to same, in different formats and through different vehicles. Long-time accountholders such as the California Plaintiffs in *Maurer* provided consent through various account agreements and online access agreements. By contrast, new

1608314488.1

8

California-based visitors to the site, including Plaintiff Shah, would encounter a consent banner on visiting www.edwardjones.com (*Shah* Complaint ¶ 1) that disclosed the use of technologies on the site and required user consent to navigate the site.  These and other myriad differences between the two actions preclude any showing that the two lawsuits substantially overlap, as Rule 42 requires.

**B.      Consolidating the Actions Would Be Premature and Risks Delay, Confusion and Prejudice**

Consolidation under Rule 42(a) is permissive, not mandatory, and courts must exercise their discretion by "weigh[ing] the interest of judicial convenience against the potential for delay, confusion and prejudice." *Zhu*, 682 F.Supp.2d at 1052. Here, the substantial potential for delay, confusion and prejudice weighs against any asserted efficiencies.

As noted above, there is a reasonable likelihood that neither action will ultimately proceed in this District. Each action carries its own independent and self-created threshold defects that individually warrant dismissal or transfer, and those defects are entirely distinct from one another, such that they cannot be resolved on a common record or through a single motion.

The *Shah* Action cannot escape the procedural trap of its own making. Having originally chosen the Central District as his forum and anchored his jurisdictional allegations there, Plaintiff Shah voluntarily dismissed his claims there and re-filed in this District the day after a judge was assigned. The complaints filed in both districts are materially identical in every respect save one: the venue allegations are flatly contradictory. That contradiction is not a pleading deficiency amenable to correction, but a fundamental inconsistency that calls into question whether this District is a proper forum for the *Shah* Action at all.  Compounding the problem, the prior action was voluntarily dismissed *with* prejudice, meaning that Plaintiff Shah may not revive his claims by refiling in this Court. *See Rumbo Perez v. Espinoza*, No. EDCV192190JGBSPX, 2020 WL 2095804, at *6 (C.D. Cal. Jan. 21, 2020) (finding plaintiff's claims were barred by his voluntary dismissal with prejudice); *McHenry v. Jordan*, 81 F.3d 169 (9th Cir. 1996), *as amended on denial of reh'g* (May 30, 1996) (holding voluntary dismissal with prejudice has preclusive effect). Until those threshold questions are resolved, any consolidated case management structure premised on the *Shah* Action's continued presence in this District is at best provisional, and may prove futile.

The *Maurer* Action is subject to equally serious, and separately grounded, threshold deficiencies. Plaintiff Maurer is a New York resident suing Missouri-based Defendants, and the *Maurer* Amended Complaint does not identify any facts tying his claims to this District, particularly given there is no record of Plaintiff Maurer ever maintaining an Edward Jones account. The California Plaintiffs fare no better as each executed account agreements committing them to litigate their disputes with Defendants in the Circuit Court of St. Louis County, State of Missouri, or the United States District Court for the Eastern District of Missouri. On resolution of Defendants' anticipated motion to transfer, the California Plaintiffs' claims will proceed in the latter Court, rather than here.

With both actions subject to dismissal or transfer on independent grounds, consolidation would require the Court and the parties to invest time and resources in a joint procedural framework that may be rendered entirely moot in the likely event that either or both actions are no longer before this Court.

### C.     Plaintiffs' Request for Appointment of Interim Co-Lead Counsel Is Premature and Unnecessary

Under Federal Rule of Civil Procedure 23(g)(3), a district court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). Critically, however, the "appointment of interim class counsel is discretionary," *Bielski v. Coinbase, Inc.*, No. C 21-07478 WHA, 2022 WL 17650535, at *2 (N.D. Cal. Dec. 13, 2022) (citation omitted), and "is typically considered once a class has been certified absent a special justification." *In re Roundup Prod. Liab. Litig.*, No. 16-MD-02741-VC, 2020 WL 1983256, at *1 (N.D. Cal. Apr. 27, 2020). "According to the advisory committee notes that accompanied the 2003 amendments to Rule 23, the benchmark is whether the designation of interim counsel is 'necessary to protect the interests of the putative class.'" *Id.* Plaintiffs cannot meet that benchmark here for at least three independent reasons.

First, the appointment of interim co-lead counsel is contingent on consolidation, which is itself unwarranted. The Manual for Complex Litigation states:

1608314488.1

10

> If the lawyer who filed the suit is likely to be the only lawyer seeking appointment as class counsel, appointing interim class counsel may be unnecessary. If, however, there are a number of overlapping, duplicative, or competing suits pending in other courts, *and* some or all of those suits may be consolidated, a number of lawyers may compete for class counsel appointment. In such cases, designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement.

Manual for Complex Litigation (Fourth) § 21.11 (2007) (emphasis added). As set forth above, the *Maurer* and *Shah* Actions should not be consolidated. Prior to a decision on the motion for consolidation, it is premature to appoint interim co-lead counsel. *See Smith v. Aon Corp.*, 238 F.R.D. 609, 613 (N.D. Ill. 2006) (noting that appointment of interim counsel was made after consolidation of twelve related cases); *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 611 (E.D. La. 2006) (appointing interim class counsel after consolidation of twenty-seven cases).

Second, there is no rivalry, competition, or uncertainty among counsel that necessitates the Court's intervention. Courts in this district have consistently declined to appoint interim class counsel where there is no genuine rivalry or competition among the law firms involved. *See, e.g., Nazemian v. NVIDIA Corp.*, No. 24-CV-01454-JST, 2025 WL 2259005, at *1 (N.D. Cal. Aug. 7, 2025); *In re OpenAI ChatGPT Litig.*, No. 23-CV-03223-AMO, 2024 WL 1834368, at *1 (N.D. Cal. Apr. 26, 2024); *Imran v. Vital Pharms., Inc.*, No. 18-CV-05758-JST, 2019 WL 1509180, at *10 (N.D. Cal. Apr. 5, 2019); *In re Nest Labs Litig.*, No. 14-CV-01363-BLF, 2014 WL 12878556, at *2 (N.D. Cal. Aug. 18, 2014). Plaintiffs do not indicate that the appointment is required to resolve "any rivalry between the [involved] firms, nor any uncertainty as to their respective roles." *Nazemian*, 2025 WL 2259005, at *1. To the contrary, "Proposed Interim Co-Lead Counsel have self-organized" and "have reached consensus about the proposed leadership structure among the group of counsel." Dkt. 22 at 1:18, 14:12-13. Where counsel have already established a cooperative working arrangement, there is no need for judicial intervention to impose that structure. *In re Seagate Tech. LLC Litig.*, No. 16-CV-00523-RMW, 2016 WL 3401989, at *3 (N.D. Cal. June 21,

1608314488.1

11

2016) ("Counsel here have never alleged that they considered competing with one another, and it appears to the court that counsel intended to cooperate with one another from the start of the case, rendering appointment of interim class counsel unnecessary."). Indeed, where counsel assert that they have the unanimous support of the law firms and lawyers involved and that counsel have "established, strong, collaborative working relationships," they cannot contend that appointment of interim co-lead counsel is necessary to ensure coordination or cooperation among various counsel. *Nazemian*, 2025 WL 2259005, at *1. Here, Plaintiffs' counsel have not alleged that they considered competing with one another, and it appears that they intended to and have cooperated with one another from the start of the case, rendering appointment of interim co-lead counsel unnecessary.

Third, there are no competing lawsuits or additional counsel threatening to enter the litigation that would justify the appointment. "[C]ourts have recognized that the typical situation requiring appointment of interim class counsel is one where a large number of putative class actions have been consolidated or otherwise are pending in a single court." *Id.* (internal quotation marks and citation omitted). Here, Plaintiffs have identified only the *Maurer* and *Shah* Actions, both filed in this District, by coordinated counsel who have already started working together. Plaintiffs "have not identified any other related lawsuits or the potential for additional attorneys to enter the fray, . . . so there are no special circumstances warranting the appointment of interim class counsel." *Id.* (internal quotation marks and citation omitted); *see also In re Seagate Tech. LLC Litig.*, 2016 WL 3401989, at *3 ("Where there are no competing lawsuits or firms, courts in this district have been unwilling to appoint interim class counsel.").

V.     **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion to Consolidate Cases and Appoint Interim Co-Lead Counsel.

Dated:  March 20, 2026

By: */s/ Michael J. Stortz*

Michael J. Stortz
Tae H. Kim
K. Taylor Yamahata

K&L GATES LLP
Attorneys for Defendants EDWARD D.
JONES & CO., L.P. and THE JONES
FINANCIAL COMPANIES, L.L.L.P.