Robert C. Schubert S.B.N. 62684
Willem F. Jonckheer S.B.N. 178748
Amber L. Schubert S.B.N. 278696
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union Street, Suite 200
San Francisco, CA 94123
Tel.: (415) 788-4220
Fax: (415) 788-0161
rschubert@sjk.law
wjonckheer@sjk.law
aschubert@sjk.law

Christian Levis (admitted *pro hac vice*)
Amanda Fiorilla (admitted *pro hac vice*)
Rachel Kesten (admitted *pro hac vice*)
Yuanchen Lu (admitted *pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com
ylu@lowey.com

*Attorneys for Plaintiffs and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

THERESA STEVENS, RICHARD MORTENSEN, and DENNIS FRASHER individually and on behalf of all others similarly situated,

Plaintiffs,

v.

EDWARD D. JONES & CO., L.P., and THE JONES FINANCIAL COMPANIES, L.L.L.P.,

Defendants.

Case No: 3:26-cv-01178-JD

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

PAGE

INTRODUCTION ..... 1
BACKGROUND ..... 1
LEGAL STANDARD ..... 2
I. Venue is Proper ..... 2
II. Plaintiffs Readily Meet the Requirement for Article III Standing ..... 4
III. Plaintiffs Plausibly Allege CIPA § 631 Claims ..... 5
IV. Plaintiffs Plausibly Allege ECPA Claims ..... 7
V. Plaintiffs Plausibly Allege CIPA § 638 Claims ..... 8
VI. Plaintiffs Plausibly Allege Invasion of Privacy Claims ..... 11
VII. Plaintiffs Plausibly Allege CDAFA and UCL Standing ..... 12
VIII. Plaintiffs Plausibly Allege Negligence Claims ..... 13
IX. Plaintiffs Plausibly Allege Unjust Enrichment Claims ..... 15
CONCLUSION ..... 15

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*A.B. by & Through Turner v. Google LLC*,
737 F. Supp. 3d 869 (N.D. Cal. 2024) ........ 15

*Alliance for Multilingual Multicultural Educ. v. Garcia*,
No. C 11–0215, 2011 WL 2532478 (N.D. Cal. June 24, 2011) ........ 3

*Armacost v. Depuy Synthes Sales, Inc.*,
No. 18-CV-01331, 2018 WL 11471582 (N.D. Cal. June 7, 2018) ........ 3

*Beyard v. Pentagon Fed. Credit Union*,
No. 1:21-CV-01063, 2025 WL 418706 (E.D. Cal. Feb. 6, 2025) ........ 3

*Brooks v. Thomson Reuters Corp.*,
No. 21-CV-01418, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ........ 15

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 8

*Brown v. Google LLC*,
No. 20-CV-03664, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ........ 13

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ........ 13

*Camplisson v. Adidas Am., Inc.*,
F. Supp. 3d, 2025 WL 3228949 (S.D. Cal. Nov. 18, 2025) ........ 4

*Casillas v. Six Flags Ent. Corp.*,
No. 2:25-CV-6824, 2025 WL 3684543 (C.D. Cal. Dec. 15, 2025) ........ 5

*Casillas v. Transitions Optical, Inc.*,
No. 23STCV30742, 2024 WL 4873370 (Cal. Super. Sept. 09, 2024) ........ 9, 10

*Cody v. E. Gluck Corp.*,
No. 23-CV-2286, 2024 WL 4314187 & n.2 (N.D. Cal. Sept. 26, 2024) ........ 5

*Conohan v. Rad Power Bikes Inc.*,
No. CV 25-0106, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) ........ 9

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ........ 4

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) ........ 5

*Cribier v. Compass, Inc.*,
2025 WL 1939869 (N.D. Cal. July 14, 2025)....................3

*Doe v. GoodRx Holdings, Inc.*,
2025 WL 2052302 (N.D. Cal. July 22, 2025)....................13

*Doe v. Meta Platforms, Inc.,*
690 F. Supp. 3d 1064 (N.D. Cal. 2023)....................8

*Doe v. N. Cal. Fertility Med. Ctr.*,
No. 22-CV-01861, 2024 WL 246178 (E.D. Cal. Jan. 23, 2024)....................14

*ESG Cap. Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016)....................15

*Fregosa v. Mashable, Inc.*,
No. 25-CV-01094, 2025 WL 2886399 (N.D. Cal. Oct. 9, 2025)....................9

*Gabrielli v. Motorola Mobility LLC*,
No. 24-cv-09533-JST, 2025 WL 1939957 (N.D. Cal. July 14, 2025)....................9, 10, 11

*Griffith v. TikTok, Inc.*,
No. 5:23-CV-00964, 2023 WL 9019035 (C.D. Cal. Dec. 13, 2023)....................4

*Hammerling v. Google LLC*,
2022 WL 17365255 (N.D. Cal. Dec. 1, 2022)....................7

*Harris v. iHeartMedia, Inc.*,
No. 25-cv-06038, 2026 WL 247875 (N.D. Cal. Jan. 29, 2026)....................9

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023)....................6

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009)....................12

*Hubbard v. Google LLC.*,
*See* No. 19-CV-07016, 2024 WL 3302066 (N.D. Cal. July 1, 2024)....................12

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021)....................14

*In re Facebook, Inc. Internet Tracking Litig.,*
956 F.3d 589 (9th Cir. 2020)....................4, 5, 11, 13

*In re Google Android Consumer Priv. Litig.*,
No. 11-MD-02264, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013)....................14

*In re Google Inc. Gmail Litig.*,
No. 13-md-02430, 2014 WL 1102660 n.13 (N.D. Cal. Mar. 18, 2014)....................8

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 12, 14

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 8

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ........ 4, 13, 14, 15

*In re Meta Pixel Tax Filing Cases,*
793 F. Supp. 3d 1147 (N.D. Cal. 2025) ........ 10

*In re Vizio, Inc. Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........ 7

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ........ 12

*In re Zynga*,
750 F.3d 1098 (9th Cir. 2014) ........ 6, 10

*J'Aire Corp. v. Gregory*,
24 Cal.3d 799 (1979) ........ 14

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ........ 6, 10

*Khamooshi v. Politico LLC,*
786 F. Supp. 3d 1174 (N.D. Cal. 2025) ........ 10

*Kis v. Cognism Inc.*,
No. 22-CV-05322, 2024 WL 3924553 (N.D. Cal. Aug. 23, 2024) ........ 13

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-cv-01473, 2025 WL 1745726 (N.D. Cal. Jun. 24, 2025) ........ 11

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ........ 7

*Krottner v. Starbucks Corp.*,
406 F. App'x 129 (9th Cir. 2010) ........ 14

*Krzyzek v. OpenX Techs., Inc.*,
No. 25-CV-05588, 2026 WL 206855 (N.D. Cal. Jan. 27, 2026) ........ 6, 8

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) ........ 7

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Mar. 13, 2024) ........ 9

*M.H. v. Done Glob. Inc.*,
No. 24-CV-03040, 2025 WL 629613 (N.D. Cal. Feb. 26, 2025) .............................................. 5, 6

*Med. Lab'y Mgmt. Consultants v. Am. Broad. Cos., Inc.*,
306 F.3d 806 (9th Cir. 2002) .......................................................................................... 12

*Mirmalek v. L.A. Times Commc'ns LLC*,
No. 24-CV-01797, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024)........................................... 9, 10

*Mitchener v. Curiositystream, Inc.*,
No. 25-cv-01471, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ................................................. 11

*Myers v. Bennett Law Offices*,
238 F.3d 1068 (9th Cir. 2001) .......................................................................................... 3

*Palacios v. Office Depot, LLC*,
No. 24STCV11977, 2024 WL 7006626 (Cal. Super. Dec. 04, 2024) .......................................... 10

*Popa v. Microsoft Corp.*,
No. 24-14, 2025 WL 2448824 (9th Cir. Aug. 26, 2025) ......................................................... 4, 12

*Pruchnicki v. Envision Healthcare Corp.*,
845 F. App'x 613 (9th Cir. 2021) ...................................................................................... 14

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ........................................................................ passim

*Rodriguez v. Cal. Highway Patrol,*
89 F. Supp. 2d 1131 (N.D. Cal. 2000) .................................................................................. 3

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 WL 487194 (Cal. Super. Jan. 27, 2025) ............................................... 9

*Semien v. Pubmatic Inc.*,
No. 25-CV-03164, 2026 WL 216333 (N.D. Cal. Jan. 27, 2026).................................................... 8

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ...................................................................... 12, 13, 15

*Silver v. Stripe Inc.*,
No. 4:20-CV-08196, 2021 WL 3191752 (N.D. Cal. July 28, 2021) ......................................... 4, 11

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021) ........................................................................................................ 9

*Smith v. Rack Room Shoes, Inc.*,
No. 24-CV-06709, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) ....................................... 7, 8, 13

*Stark v. Patreon, Inc.*,
635 F. Supp. 3d 841 (N.D. Cal. 2022) ................................................................................ 13

*Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898 (S.D. Cal. 2020) ........ 14

*Stein v. Edward-Elmhurst Health*, No. 23-CV-14515, 2025 WL 580556 (N.D. Ill. 2025) ........ 8

*Thomas v. Papa Johns Int'l, Inc.*, No. 22CV2012, 2024 WL 2060140 (S.D. Cal. May 8, 2024) ........ 12

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ........ 4

*Turner v. Apple, Inc.*, No. 5:20-CV-07495, 2022 WL 445755 (N.D. Cal. Feb. 14, 2022) ........ 15

*Wesch v. Yodlee, Inc.*, No. 20-CV-05991, 2021 WL 1399291 (N.D. Cal. Feb. 16, 2021) ........ 11

*Yale v. Clicktale, Inc.*, No. 20-cv-07575, 2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) ........ 6

**STATUTES**

28 U.S.C. § 1391 ........ 3

28 U.S.C. § 1391(b)(2) ........ 3

Cal. Penal Code § 638.51 ........ 10, 11

Cal. Penal Code § 638.51(b) ........ 10

## INTRODUCTION

When individuals access a secure financial platform, they reasonably expect that their communications—including the substance of their financial transactions and account activity—will remain private and confined to the intended recipient. Edward Jones violated that expectation. As alleged in the Amended Complaint, Edward Jones embedded third-party tracking technologies on its web properties that caused Plaintiffs' communications to be intercepted and transmitted to third parties without consent. This included full transaction histories, account values, and portions of account numbers, alongside persistent identifiers such as IP addresses and tracking cookies that allow these third parties to associate the data with specific individuals.

Edward Jones attempts to trivialize this conduct by labeling the data "unremarkable" and suggesting consumers "should expect" such disclosures. But the law—and common sense—say otherwise. Courts have repeatedly recognized that communications revealing a user's queries, inputs, and financial activity constitute protected "content," particularly where, as here, the communications occur within a password-protected environment designed to convey private financial information. Defendants' other legal arguments are equally flawed. For instance, Defendants' claim that the interception does not occur while the communication is "in transit" ignores how its own technology operates. As alleged, the tracking technologies intercept and transmit Plaintiffs' communications in real-time, through automatic requests triggered contemporaneously with user activity—often before the communication is fully received by Edward Jones itself. This is not passive, delayed data collection; it is a wiretap.

For these reasons, and those set forth below, Defendants' Motion should be denied in its entirety.

## BACKGROUND

Edward Jones operates a public-facing website and password-protected customer portal, through which customers can answer financial questionnaires, view account balances, review transaction histories, and communicate sensitive financial information. *See* Pls.' Amended Class

Action Complaint ("Complaint"), ECF No. 16 ¶¶ 63-64, 104-105, 118.[1] Plaintiffs used these properties with the understanding that their interactions would remain private and confined to Edward Jones. Complaint ¶¶ 64, 129-130. In reality, however, Edward Jones embedded third-party tracking technologies throughout these properties, including within the authenticated portal itself, which caused Plaintiffs' communications to be intercepted and transmitted to third parties without their knowledge or consent. Complaint ¶¶ 103-130.

These tracking technologies—including tools provided by Google, Meta, LinkedIn, Trade Desk, and ClickTale—are designed to intercept users' searches and queries. Complaint ¶¶ 71-73, 79, 88-90, 93-94, 101. This included full transaction histories, account balances and total asset values, and portions of account numbers, all of which were transmitted alongside persistent identifiers (i.e., IP addresses, cookies, and device/user identifiers) that allow these third parties to associate the data with particular individuals. *Id.* ¶¶ 106-115, 119-125.

The third parties receiving this data are among the largest advertising and data analytics companies in the world, and they use the intercepted information for their own independent commercial purposes. *Id.* ¶¶ 68-70, 76, 84, 87-88, 92, 102. For example, Google uses data collected through its tracking technologies to associate user activity with its broader datasets and deliver targeted advertising, while platforms like Meta and Trade Desk use similar information to optimize ad targeting and build audiences based on user behavior. *Id.* ¶¶ 71-73, 79.

## LEGAL STANDARD

### I. Venue is Proper

Defendants concede that this Court has personal jurisdiction over these claims and that venue is proper as to Plaintiff Frasher. This makes sense. Plaintiff Frasher resides in this District, where he frequently used Edward Jones web properties. ¶¶ 46, 49. Accordingly, Plaintiff Frasher had his private and identifiable communications, including full transaction histories, intercepted by third parties from this forum. Likewise, many of these third parties are also residents of this forum, including Google,

[1] "¶" or "¶" refers to Plaintiffs' Amended Class Action Complaint, ECF No. 16.

Meta, Trade Desk, such that all Plaintiffs and Class Members had their data monetized and used from the Northern District of California. This is sufficient to establish venue.

Edward Jones's contention that venue must be independently proper for each and every Plaintiff (Mot. at 4) is incorrect. *See Armacost v. Depuy Synthes Sales, Inc.*, No. 18-CV-01331, 2018 WL 11471582, at *2 (N.D. Cal. June 7, 2018) (rejecting that "each plaintiff must establish that venue is proper in this District in order for their claims not to be dismissed" as there is no "authority supporting that position."); *Rodriguez v. Cal. Highway Patrol,* 89 F. Supp. 2d 1131, 1136 (N.D. Cal. 2000) (rejecting argument that plaintiffs who had claims from incidents occurring in the Eastern District of California could not bring their claims alongside an individual who had claims arising out of the Northern District of California); *Beyard v. Pentagon Fed. Credit Union*, No. 1:21-CV-01063, 2025 WL 418706, at *6 (E.D. Cal. Feb. 6, 2025) (finding venue proper for both named plaintiffs because "§ 1391 requires only that 'a substantial part' of the relevant 'events or omissions' occurred within this District—without imposing any plaintiff-by-plaintiff requirements.").

Edward Jones's position also makes little sense as a practical matter. If Plaintiff Frasher proceeded alone, with the remaining Plaintiffs as absent class members, there would be no dispute that venue is proper in this District. The same claims, based on the same conduct, do not become improper simply because additional similarly situated plaintiffs are named. Section 1391(b)(2) does not impose such a formalistic limitation, and Defendants cite no authority that does. Mot. at 4-5 (citing *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001) (merely noting location of the injury is one relevant factor for evaluating venue); *Alliance for Multilingual Multicultural Educ. v. Garcia*, No. C 11–0215, 2011 WL 2532478, at *7 (N.D. Cal. June 24, 2011) (no plaintiff or defendant resides in this forum and servers were located in the Central District); *Cribier v. Compass, Inc.*, 2025 WL 1939869, at *4-5 (N.D. Cal. July 14, 2025) (action involved a singular defendant who resided outside the forum).

## II. Plaintiffs Readily Meet the Requirement for Article III Standing

"Intrusion upon seclusion" is one of the quintessential harms sufficient to confer Article III standing. *See, e.g.*, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Consistent with this

precedent, courts in the Ninth Circuit have repeatedly held that the covert collection and exploitation of individuals' private data is a concrete privacy harm that conveys standing. *See Griffith v. TikTok, Inc.*, No. 5:23-CV-00964, 2023 WL 9019035, at *2-4 (C.D. Cal. Dec. 13, 2023) (finding standing where defendants collected "browsing data" including "financial information" from third party websites); *In re Facebook, Inc. Internet Tracking Litig*. ("*Facebook Tracking*"), 956 F.3d 589, 599 (9th Cir. 2020) (finding standing where company "tracked" consumers' "browsing histories").

Here, Plaintiffs allege that Edward Jones disclosed their private and identifiable data to advertising companies, including their detailed transaction history, financial goals, and total assets across accounts. *See* Background Section, *supra*. Plaintiffs also allege that the third parties to whom this information was disclosed used this data for ad targeting and optimization. *Id.* These allegations are sufficient to allege a concrete privacy violation and establish Article III standing. *See Silver v. Stripe Inc.*, No. 4:20-CV-08196, 2021 WL 3191752, at *6 (N.D. Cal. July 28, 2021) (recognizing expectation of privacy in financial transactions); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1025 (N.D. Cal. 2024) (same); *Cottle v. Plaid Inc.,* 536 F. Supp. 3d 461, 480 (N.D. Cal. 2021) (holding undisclosed collection of consumers' private transaction data by a third party gives rise to Article III standing and sustaining privacy claims based on the same conduct); *Camplisson v. Adidas Am., Inc*., --- F. Supp. 3d ---, 2025 WL 3228949, at *6 (S.D. Cal. Nov. 18, 2025) (finding Article III standing where "Trackers on Defendant's website have collected a broad set of their personal identifying and addressing information[.]"). Edward Jones's own authority also recognizes this. *See* Mot. at 6 (citing *Popa v. Microsoft Corp.*, No. 24-14, 2025 WL 2448824, at *5 (9th Cir. Aug. 26, 2025)) (finding the collection of "pet-store preferences" through session-replay technology embedded on a website is not privacy invasive but that certain data collection through tracking technology "could be offensive" if it involved "*sensitive*" information like "*financial information*") (emphasis added).

Edward Jones's contention that Plaintiffs' allegations are too "boilerplate" makes little sense. Mot. at 6. Plaintiffs' allegations here are especially robust, spelling out precisely the types of data disclosed to third parties (i.e., IP address, cookies, user identifiers, transaction history, assets, etc.), when (i.e., when consumers interact with the Edward Jones online portal or questionnaire), and how

(i.e., through pixels embedded on the Edward Jones web properties), and are supported by actual testing excerpted throughout the Complaint. The sole case it cites is inapposite, containing none of the detailed allegations alleged here. *See* Mot. at 6 (citing *Cody v. E. Gluck Corp.*, No. 23-CV-2286, 2024 WL 4314187, at *2 & n.2 (N.D. Cal. Sept. 26, 2024) (plaintiff failed to allege she even used the "chat feature" that allegedly disclosed some non-descript data to third parties).

## III. Plaintiffs Plausibly Allege CIPA § 631 Claims

Plaintiffs allege that Edward Jones violated CIPA § 631's fourth clause because it intentionally installed and utilized third-party technology on its website to enable these third parties to both intercept identifiable communications and use them to profile and target Plaintiffs and Class Members. *See M.H. v. Done Glob. Inc.,* No. 24-CV-03040, 2025 WL 629613, at *2 (N.D. Cal. Feb. 26, 2025) (imposing CIPA liability under the fourth prong where the entity "purposefully installed the[] tracking technologies" on its website). Edward Jones only challenges whether the data at issue constitutes "content" and "in transit" requirements. Mot. at 7-9.

***Plaintiffs Plausibly Allege Content.*** The Ninth Circuit, and countless district court decisions, have confirmed full-string URLs and other data fields that reveal private "interests, queries, and habits" qualify as "content." *See Facebook Tracking*, 956 F.3d at 605 (holding full-string URLs are content because they "could divulge a user's personal interests, queries, and habits"); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023) ("personal search queries" convey content); *Casillas v. Six Flags Ent. Corp.*, No. 2:25-CV-6824, 2025 WL 3684543, at *5 (C.D. Cal. Dec. 15, 2025) (finding "browsing habits" are "content"). Because Edward Jones disclosed its customers' private searches and queries, including their financial transaction history, Edward Jones disclosed the content of their communications.

The cases Edward Jones cites do not dispute this, but merely involved different data, some of which *was found* to be contents. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (information entered in forms is "content"). *In re Zynga*, 750 F.3d 1098 at 1106 (9th Cir. 2014) (data breach involving only "identification and address information"); *Yale v. Clicktale, Inc.*,

No. 20-cv-07575, 2021 WL 1428400, at *1, *3 (N.D. Cal. Apr. 15, 2021) (involving only metadata like date and time of visit). These different cases have no relevance here.

***Plaintiffs Meet CIPA § 631's "In Transit" Requirement.*** As alleged in the Complaint—and supported by actual testing—the technology Edward Jones embedded on its web properties immediately intercepts and learns the content of Plaintiffs' communications in real-time. ¶¶ 104-127. For example, when an Edward Jones customer queries their financial transactions, Google immediately intercepts these transaction records through "GET" requests as a result of the tracking technology embedded on this web page, as excerpted in the Complaint. ¶¶ 122-126. Google receives the content of these communications earlier or at the same time as Edward Jones. ¶¶ 71, 106-108.

Several courts have found these types of allegations sufficient to meet CIPA's "in transit" requirement. *See Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1092 (N.D. Cal. 2025) (plaintiffs plausibly alleged interception took place "before the communications are received" and "completely loaded" by the intended recipient); *Krzyzek v. OpenX Techs., Inc.*, No. 25-CV-05588, 2026 WL 206855, at *7 (N.D. Cal. Jan. 27, 2026) (similar allegations that pixel intercepted data "in transit" and "within seconds" sufficient to meet "in transit" requirement); *M.H. v. Done Glob. Inc.*, No. 24-CV-03040, 2025 WL 629613, at *2 (N.D. Cal. Feb. 26, 2025) (finding contemporaneous duplication and transmission sufficient to allege in transit requirement).

While Edward Jones characterizes these allegations as boilerplate (Mot. at 7-8), these allegations are supported by actual testing and reflect the basic operation of this type of pixel technology, which several courts have acknowledged involve the "real time" and simultaneous interception of data. *See, e.g.*, *Krzyzek*, 2026 WL 206855, at *7. Requiring additional, highly specific detail at this stage—like Edward Jones seems to suggest—is not required. *See Riganian*, 791 F. Supp. 3d at 1092 (explaining "how the challenged technology and processes actually work" is more appropriately addressed "at summary judgment").

Unlike Plaintiffs' robust allegations here, the cases Edward Jones cites each failed to allege "how or when" the alleged interception ever took place. Mot. at 8 (citing *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1085 (C.D. Cal. 2023) (no allegation of "how or when the

interception takes place"); *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1018 (C.D. Cal. 2023) (no "factual details" of "when the interception occurred"); *Hammerling v. Google LLC*, 2022 WL 17365255, at *10 (N.D. Cal. Dec. 1, 2022) (same); *In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1226, 1228 (C.D. Cal. 2017) (same). Or they are cases that did not allege an interception at all. *See* Mot. at 7 (citing *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002)) (no interception because communications were already posted to website before they were read). Neither of these circumstances are present here.

Edward Jones's separate assertion that Plaintiffs' use of the word "disclosure" means the interception could not have occurred in real-time is illogical. Mot. at 8. Nothing about the use of this word is inconsistent with Plaintiffs' allegations that the interception occurs in real-time. Likewise, its obsession over how Plaintiffs allege Edward Jones can "control" how events are "categorized prior to their transmission" also does not defeat the plausibility of Plaintiffs' allegations. *Id*. This sentence merely means Edward Jones sets up the pixel and can customize it—not that there's some nondescript "processing" prior to transmission. Edward Jones cannot rewrite Plaintiffs' allegations to suit its own narrative and then claim that is a basis to dismiss Plaintiffs' CIPA claim.

## IV. Plaintiffs Plausibly Allege ECPA Claims

Edward Jones does not separately challenge Plaintiffs' Electronic Communications Privacy Act ("ECPA") claim, relying instead on the arguments addressed above—which should be rejected—aside from asserting that the crime-tort exception does not apply. Mot. at 9-10. This is wrong.

The ECPA's one-party consent rule does not apply where "the purpose for the interception" was "criminal or tortious." *See Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709, 2025 WL 2210002, at *4 (N.D. Cal. Aug. 4, 2025). This exception applies where, as here, the defendant had "'an independent prohibited purpose' beyond the act of interception itself," such as to disclose the intercepted data to third parties, use it "for advertising" or to create user profiles. *See id*. at *4-5; *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (allegations that "Google intercepted [plaintiffs'] communications for the purpose of associating their data with preexisting user profiles" sufficient to invoke crime-tort exception); *Riganian*, 791 F. Supp. 3d at 1090-91 (same);

*Krzyzek*, 2026 WL 206855, at *8 (same).

Contrary to Edward Jones's suggestion, the existence of a financial motivation for breaking the law "does not mean that the act lacked a criminal or a tortious purpose." *See Stein v. Edward-Elmhurst Health*, No. 23-CV-14515, 2025 WL 580556, at *6 (N.D. Ill. 2025) ("That's like saying that a bank robber's purpose was not to commit a crime—it was to make money."). Indeed, "the majority" of courts have "held a monetary purpose does not insulate a party from liability under the Wiretap Act." *Smith*, 2025 WL 2210002, at *5; *see also Riganian*, 791 F. Supp. 3d at 1090 ("[C]ommitting a tort and seeking a profit are not mutually exclusive[.]"); *Krzyzek*, 2026 WL 206855, at *8 (same); *Semien v. Pubmatic Inc.*, No. 25-CV-03164, 2026 WL 216333, at *10 (N.D. Cal. Jan. 27, 2026) (same). Neither of the two cases Edward Jones cites supports this proposition, as both merely held that a financial motive *absent* a showing of a criminal or a tortious purpose is not enough. *See* Mot. at 9-10 (citing *In re Google Inc. Gmail Litig.*, No. 13-md-02430, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014)) (noting "to make money" alone insufficient to establish crime-tort exception); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) (same at preliminary injunction stage); *Doe v. Meta Platforms, Inc.,* 690 F. Supp. 3d 1064, 1078 (N.D. Cal. 2023) (later sustaining ECPA claim).

## V. Plaintiffs Plausibly Allege CIPA § 638 Claims

CIPA § 638.51(a) prohibits the use of pen registers without a court order. Edward Jones only argues (1) that CIPA § 638.51 only applies to telephones; and (2) that some of the data at issue here is "contents" such that § 638.51 categorically does not apply. Mot. at 11. Both arguments fail.

Edward Jones's suggestion that Sections 638.50 and 638.51 do not apply to the interception of internet communications has been repeatedly rejected by courts in this Circuit. Mot. at 25; *Harris v. iHeartMedia, Inc.*, No. 25-cv-06038, 2026 WL 247875, at *3 (N.D. Cal. Jan. 29, 2026) (collecting cases) ("The overwhelming majority of courts . . . have similarly concluded that third-party internet trackers meet the technical requirements of a pen register[.]"); *Mirmalek v. L.A. Times Commc'ns LLC*, No. 24-CV-01797, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (finding software that intercepts users' IP addresses is a pen register); *Riganian,* 791 F. Supp. 3d at 1092-94 (finding

JavaScript code that tracks users' name, email, and phone number is pen register). And while Edward Jones has managed to find one case[2] that has limited CIPA § 638.51(a) to telephone communications (see Mot. at 10 (citing *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025)), that conclusion is not supported by the plain language of CIPA § 638.51(a) or its legislative history. *See e.g.*, *Mirmalek*, 2024 WL 5102709, at *3 (rejecting argument that § 638.51 applies only to telephones based on the statute's plain language); *Conohan v. Rad Power Bikes Inc.*, No. CV 25-0106, 2025 WL 1111246, at *6 (C.D. Cal. Apr. 3, 2025) (same); *Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 WL 1939957, at *11-12 (N.D. Cal. July 14, 2025) (same); S. Comm. on Pub. Safety, Analysis of A.B. 929, 2015-2016 Reg. Sess. (Cal. June 16, 2015) at 10 (choosing to define terms more broadly in recognition of the "age of rapidly changing technology"); *id.* at 16 (explaining pen registers and trap or trace devices "track which people . . . are communicating with one another and at what times").

Its claim that CIPA § 638.51(a) does not apply because Edward Jones collects IP addresses is also belied by the weight of authority. Several courts have sustained CIPA § 638.51(a) claims based on the collection of this type of data. *See, e.g.*, *Mirmalek*, 2024 WL 5102709, at *3-4 (software trackers that intercept users' IP addresses is pen registers); *Fregosa v. Mashable, Inc.*, No. 25-CV-01094, 2025 WL 2886399, at *5-6 (N.D. Cal. Oct. 9, 2025) (same). The two cases Edward Jones cites, *Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370, at *4 (Cal. Super. Sept. 09, 2024), and *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Cal. Super. Mar. 13, 2024), are outliers that held IP addresses cannot be the basis for a CIPA § 638.51(a) claim because IP addresses are a necessary component of every online communication. These cases overlook that while IP addresses are required for internet communications, the entity to whom plaintiff is communicating is not required to independently disclose this information to a separate third party to provide its web services, and it is this separate conduct that violates CIPA § 638.51(a). But even if the Court were to consider this authority, it still would not apply here because Plaintiffs'

[2] *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 191 (2021), which Edward Jones also cites, interpreted CIPA § 632.7 which is not at issue here.

CIPA § 638.51(a) claim is ***not*** premised solely on IP addresses—like in *Casillas*—but other addressing information such as user identifiers and cookies that are not part of "standard computer operations." 2024 WL 4873370, at *4.

Edward Jones's next argument, that Plaintiffs must allege more than the disclosure and interception of "IP addresses and user and device identifiers" makes little sense. Several courts, including Edward Jones's own cited authority, acknowledge this type of data is record/addressing information and thus actionable under CIPA § 638.51(a). *See In re Zynga*, 750 F.3d at 1106 ("[R]ecord information . . . includes the 'name,' 'address,' and 'subscriber number or identity' of a subscriber or customer."); *Katz-Lacab*e, 668 F. Supp. 3d at 945 n.9 (explaining IP addresses, date, and times of visits are record information); *Mirmalek*, 2024 WL 5102709, at *4 (explaining IP address and cookies are addressing information). Edward Jones cites no authority for this claim or its assertion that Plaintiffs must prove they have a protectable privacy interest. Mot. at 11 (citing *Palacios v. Office Depot, LLC*, No. 24STCV11977, 2024 WL 7006626, at *3 (Cal. Super. Dec. 04, 2024) (evaluating whether collection of IP addresses establishes standing); *Khamooshi*, 786 F. Supp. 3d at 1179 (same).

Finally, Edward Jones argues that because the third-party software also intercepts the "contents" of a communication, in addition to addressing information, that it is immune from liability under CIPA § 638.51(a). Courts do not accept this reading. *Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1154 (N.D. Cal. 2025) (rejecting the same "loophole" argument as "troubling" given it would permit "unauthorized pen register" and noting courts have "unsurprising[ly]" permitted both claims at the same time); *see also Riganian*, 791 F. Supp. 3d at 1092-94 (allowing Section 631(a) and Section 638.51 claims to proceed concurrently); *Gabrielli*, 2025 WL 1939957, at *11-12 (same). Indeed, if Edward Jones were correct, this exception would be on the enumerated list that is part of the statute. *See* Cal. Penal Code § 638.51(b) (listing exceptions). The legislative history further reflects this, showing that CIPA § 638.51's use of the phrase "but not the contents" was only intended to make clear that a court order granting permission to use a pen register does *not* also include the *right* to intercept "content[s]" because the interception of contents is subject to a "much higher standard of scrutiny." *See* S. Comm. on Pub. Safety, Analysis of A.B. 929, 2015-2016 Reg. Sess.

(Cal. June 16, 2015) at 11. In other words, the legislature did not intend to convey immunity to a defendant who is intercepting *both* addressing information and contents. *See id*.

While Edward Jones cites two decisions by a single federal judge that held otherwise (*Kishnani v. Royal Caribbean Cruises Ltd.*, Case No. 25-cv-01473, 2025 WL 1745726, at *4 (N.D. Cal. Jun. 24, 2025), and *Mitchener v. Curiositystream, Inc.*, Case No. 25-cv-01471, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025)), these decisions incorrectly adopt a defendant-created escape-valve without appreciating what such an exception does to allow conduct *worse* than what their own holdings say the statute prohibits.

**VI. Plaintiffs Plausibly Allege Invasion of Privacy Claims**

Courts evaluating common law intrusion upon seclusion claims and invasion of privacy claims under the California Constitution consider whether: "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *See Facebook Tracking*, 956 F.3d at 601.

Both requirements are satisfied here. Consumers have a reasonable expectation of privacy not to have their private and identifiable data—like financial transaction records—intercepted and used for targeted advertising without their consent. *See Silver v. Stripe Inc.*, No. 4:20-CV-08196, 2021 WL 3191752, at *6 (N.D. Cal. July 28, 2021) (recognizing expectation of privacy in financial transactions); *Wesch v. Yodlee, Inc.*, No. 20-CV-05991, 2021 WL 1399291, at *3 (N.D. Cal. Feb. 16, 2021) ("Plaintiffs have a reasonable expectation of privacy" in their "personal, financial account" data.). And the interception and use of this data—including private transaction records shared on a password-protected portal provided by one's financial provider—is highly offensive. *See Gabrielli*, 2025 WL 1939957, at *10 (refusing to conclude as a matter of law that the collection of IP addresses and browsing history is not highly offensive); *see also Popa v. Microsoft Corp.*, No. 24-14, 2025 WL 2448824, at *1-2, 5 (9th Cir. Aug. 26, 2025) (finding that certain data collection through tracking technology "could be offensive" if it involved "sensitive" information like "financial information").

The cases Edward Jones cites are inapposite, involving the collection of different (and largely innocuous) data—like pizza orders—through session replay technology. Mot. at 12 (citing *Thomas v. Papa Johns Int'l, Inc.*, No. 22CV2012, 2024 WL 2060140, at *2-3 (S.D. Cal. May 8, 2024)) (session

replay technology on a singular website used to order pizza); *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1047 (N.D. Cal. 2025) (finding information provided to obtain credit card pre-approval, like type of bank account, not highly offensive). Or companies collecting data from its own web properties, like in *Hubbard v. Google LLC*. *See* No. 19-CV-07016, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) (defendant commingled data collected from its own services), and *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014) (alleging privacy interest in all email addresses sent or received on defendant's own platform). And other non-analogous circumstances, like *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012), a decade-old decision, in which plaintiffs sought to hold Apple liable for third-party software embedded in non-Apple apps. *See also* Mot. at 12 (citing *Med. Lab'y Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 819 (9th Cir. 2002)) (evaluating whether broadcasting of misread pap smear slides is highly offensive); *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009) (evaluating whether recording employees at work is highly offensive).

Edward Jones's final argument that Plaintiffs do not adequately plead the "use" of their information is also wrong. Mot. at 12. As alleged in the Complaint, the data Edward Jones disclosed is used by third parties, including Meta and Google, to improve their ad optimization (i.e., ensuring which individuals are shown certain ads at certain times). This is an actionable misuse. *See Riganian,* 791 F. Supp. 3d at 1085-89 (sustaining intrusion upon seclusion claim where data disclosed was used to "generate uniquely identifying profiles" from users' internet activity).

## VII. Plaintiffs Plausibly Allege CDAFA and UCL Standing

For Plaintiffs' CDAFA and UCL claims, Edward Jones only challenges Plaintiffs' standing to assert these claims. Here, Plaintiffs allege three viable theories of standing.

First, Plaintiffs allege they lost money or property in the form of their valuable data, which Edward Jones unlawfully disclosed without their consent. *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 635-36 (N.D. Cal. 2021) ("California courts have also acknowledged that users have a property interest in their personal information."); *Brown v. Google LLC*, No. 20-CV-03664, 2021 WL 6064009, at *17 (N.D. Cal. Dec. 22, 2021) ("[T]he Ninth Circuit and a number of district courts . . .

have concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing.") (citation omitted); *Kis v. Cognism Inc.*, No. 22-CV-05322, 2024 WL 3924553, at *7 (N.D. Cal. Aug. 23, 2024) (same) (citing cases)); *Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1024-25 ("If [personal] information is stolen or disseminated without their permission, its value may be diminished.").

While some courts have held that diminution in value of personal information is not a cognizable loss of money or property under the UCL (*see* Mot. at 13) the better-reasoned cases find these types of harms are cognizable given the real-world market for this data. *See, e.g.*, *Calhoun*, 526 F. Supp. 3d at 636. The Court should do the same here.

Second, Plaintiffs separately have UCL standing premised on the unjust profits Edward Jones reaped by misappropriating and disclosing Plaintiffs' private data. *See Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *12 (N.D. Cal. July 22, 2025) (recognizing taking valuable data without compensation established UCL standing); *Smith*, 2025 WL 2210002, at *3 (finding that a "disgorgement theory" can satisfy CDAFA standing). While Defendants cite *Shah*, 768 F. Supp. 3d at 1048, to claim that unjust profits are not enough for UCL standing absent a corresponding loss, that decision ignores *Facebook Tracking*, which acknowledged a plaintiff is entitled to unjust profits under California law without making this showing. *See* 956 F.3d at 600.

Third, Plaintiffs allege UCL standing because they allege they would not have paid money to Edward Jones, or would have paid less, if they were aware that Edward Jones would secretly disclose their private data. *See* ¶¶ 153, 278; *see also Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 854-55 (N.D. Cal. 2022) (finding the court need not address whether data has value because plaintiffs' allegation that they would not have "paid . . . subscription fees" if they had known of the unlawful data sharing was sufficient for UCL standing).

## VIII. Plaintiffs Plausibly Allege Negligence Claims

Edward Jones argues that Plaintiffs' negligence claim fails: (1) under the economic loss doctrine; and (2) for failure to allege harm. Neither argument is consistent with the law.

***Economic Loss Doctrine Does Not Apply.*** The economic loss doctrine does not apply for at

least two reasons. First, Plaintiffs allege privacy injuries, which are not economic in nature. *See Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 913 (S.D. Cal. 2020) (explaining privacy injuries are not "necessarily 'economic' in nature"); *Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1020 (same); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1142 (C.D. Cal. 2021) (same). Second, the economic loss doctrine does not apply because Edward Jones's duty does not arise from any contractual obligation but from common law tort duties not to "disclose private facts." *See Stasi*, 501 F. Supp. 3d at 914. Neither of these exceptions turns on whether Plaintiffs and Edward Jones are "in privity of contract" like Edward Jones contends in its Motion. *See* Mot. at 14 (citing *J'Aire Corp. v. Gregory*, 24 Cal.3d 799, 804 (1979)) (evaluating separate special relationship exception).

***Plaintiffs Allege Viable Theories of Harm.*** Plaintiffs allege privacy harms, diminution in value, and loss of benefit of the bargain, all of which are viable negligence damages. *See Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1020 (sustaining negligence claims premised on "loss of privacy," "loss of the benefit of the bargain," and "diminution in value of their protected financial information"); *Doe v. N. Cal. Fertility Med. Ctr.*, No. 22-CV-01861, 2024 WL 246178, at *5 (E.D. Cal. Jan. 23, 2024) (finding privacy harms are sufficient damages for purposes of a negligence claim); *In re Ambry*, 567 F. Supp. 3d at 1142 (same). None of the cases cited by Edward Jones address whether privacy harms are viable negligence damages. Mot. at 13 (citing *In re iPhone App. Litig.*, 844 F. Supp. 2d at 1064 (no allegation of privacy harms); *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021) (same); *In re Google Android Consumer Priv. Litig.*, No. 11-MD-02264, 2013 WL 1283236, at *13 (N.D. Cal. Mar. 26, 2013) (evaluating economic loss doctrine)).

Edward Jones's argument that Plaintiffs' privacy injuries are "rooted in the alleged risk of future harm" makes little sense. Mot. at 14. The disclosure and use of Plaintiffs' data at the time they used the Edward Jones web properties was a completed tort causing actual privacy harm at that time. Thus, *Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010), which addressed future risk of harm from a data breach and is cited by Edward Jones, is plainly inapplicable. *See Meta Pixel*

*Tax Filing Cases,* 724 F. Supp. 3d at 1020 (explaining harms like "loss of privacy," "diminution in value," and a "loss of the benefit of their bargain" are all harms that "ha[ve] already occurred" and are thus "retrospective rather than prospective.").

**IX. Plaintiffs Plausibly Allege Unjust Enrichment Claims**

"To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). Here, Plaintiffs allege that Edward Jones monetized Plaintiffs' private data, including transaction history, by disclosing this information to large advertisers. These ill-gotten profits rightfully belong to Plaintiffs and the Classes. *A.B. by & Through Turner v. Google LLC*, 737 F. Supp. 3d 869, 885 (N.D. Cal. 2024) (plaintiffs "adequately plead[] that defendants were unjustly enriched by collecting plaintiffs' personal information and employing it to target advertisements").

Edward Jones briefly argues in passing that unjust enrichment is unavailable because Plaintiffs have an adequate remedy at law. Not so. Several decisions recognize legal damages are not sufficient to remedy privacy violations or continued misappropriation of one's data. *See Turner v. Apple, Inc.*, No. 5:20-CV-07495, 2022 WL 445755, at *4 (N.D. Cal. Feb. 14, 2022) (allowing equitable claims based on "misappropriated data" because "legal damages do not cover the full value of the harm"); *Brooks v. Thomson Reuters Corp.*, No. 21-CV-01418, 2021 WL 3621837, at *11 (N.D. Cal. Aug. 16, 2021) (sustaining unjust enrichment claim where "the injury [] is an invasion of privacy that can never be fully remedied through damages"). Edward Jones's own authority held the same. *See* Mot. at 13 (citing *Shah*, 768 F. Supp. 3d at 1051).

Meanwhile, its claim that Plaintiffs' unjust enrichment claims fail because Plaintiffs' other "substantive claims fail" (Mot. at 15) is wrong for the reasons described herein.

**<u>CONCLUSION</u>**

For the foregoing reasons, the Court should deny Edward Jones's Motion to Dismiss.

Dated: April 20, 2026

By: /s/ Amber L. Schubert

Amber L. Schubert S.B.N. 278696
Willem F. Jonckheer S.B.N. 178748
Robert C. Schubert S.B.N. 62684
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union Street, Suite 200
San Francisco, CA 94123
Tel.: (415) 788-4220
Fax: (415) 788-0161
rschubert@sjk.law
wjonckheer@sjk.law
aschubert@sjk.law

Christian Levis (admitted *pro hac vice*)
Amanda Fiorilla (admitted *pro hac vice*)
Rachel Kesten (admitted *pro hac vice*)
Yuanchen Lu (admitted *pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com
ylu@lowey.com

*Attorneys for Plaintiffs Theresa Stevens, Richard Mortensen, and Dennis Frasher*