Michael J. Stortz (139386)
Michael.Stortz@klgates.com
Tae H. Kim (331362)
Tae.Kim@klgates.com
K. Taylor Yamahata (347192)
Taylor.Yamahata@klgates.com
K&L GATES LLP
Four Embarcadero Center, Suite 1200
San Francisco, California 94111
Telephone: +1 415 882 8200
Facsimile: +1 415 882 8220

Attorneys for Defendants
EDWARD D. JONES & CO., L.P. and THE JONES FINANCIAL COMPANIES, L.L.L.P.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

MARK MAURER, THERESA STEVENS, RICHARD MORTENSEN, CHRIS WALL, AND DENNIS FRASHER individually and on behalf of all others similarly situated,

Plaintiffs,

v.

EDWARD D. JONES & CO., L.P, and THE JONES FINANCIAL COMPANIES, L.L.L.P.,

Defendants.

Case No. 3:26-cv-01178-JD

*Assigned for all purposes to Hon. James Donato*

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Date: May 14, 2026
Time: 10:00 a.m.
Location: Courtroom 11 – 19th Floor
Judge: Hon. James Donato

Complaint Filed: February 6, 2026
Am. Compl. Filed: February 20, 2026

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. Dismissal of Two of the Five Named Plaintiffs Underscores the Deficiencies of Plaintiffs' Standing Allegations .......... 1

B. Venue Remains Improper as to Plaintiffs Stevens and Mortensen .......... 2

C. Plaintiffs Fail to State a Claim under CIPA § 631 and the ECPA .......... 3

D. Plaintiffs' CIPA §§ 638.50 and 638.51 Claim Remains Deficient .......... 5

E. Plaintiffs Fail to State a Claim for Invasion of Privacy .......... 7

F. Plaintiffs Lack Statutory Standing Under the UCL and CDAFA .......... 8

G. Plaintiffs Fail to State a Viable Negligence Claim .......... 9

H. Plaintiffs Fail to Allege Unjust Enrichment .......... 10

III. CONCLUSION .......... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) ........ 9

*Heiting v. HP Inc.*,
No. 24STCV29634, 2025 WL 2993673 (Cal.Super. Aug. 01, 2025) ........ 6

*Armacost v. Depuy Synthes Sales, Inc.*,
No. 18-CV-01331, 2018 WL 11471582 (N.D. Cal. June 7, 2018) ........ 3

*Beyard v. Pentagon Fed. Credit Union*,
No. 1:21-CV-01063, 2025 WL 418706 (E.D. Cal. Feb. 6, 2025) ........ 3

*Camplisson v. Adidas Am., Inc.*,
809 F. Supp. 3d 1095 (S.D. Cal. 2025) ........ 2

*Casillas v. Six Flags Ent. Corp.*,
No. 2:25-CV-6824, 2025 WL 3684543 (C.D. Cal. Dec. 15, 2025) ........ 4, 5

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ........ 2, 8

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) ........ 4, 5

*Esparza v. Gen. Digit. Inc.*,
2024 WL 655986 (C.D. Cal. Jan. 2024) ........ 4

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 2, 4

*Gabrielli v. Motorola Mobility LLC*,
No. 24-cv-09533-JST, 2025 WL 1939957 (N.D. Cal. July 14, 2025) ........ 8

*Gerber v. Twitter, Inc.*,
No. 4:23-CV-00186-KAW, 2024 WL 1354449 (N.D. Cal. Mar. 29, 2024) ........ 8

*In re Google Inc. Gmail Litig.*,
No. 13-md-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ........ 5

*Harris v. iHeartMedia, Inc.*,
No. 25-cv-06038, 2026 WL 247875 (N.D. Cal. Jan. 29, 2026) ........ 6

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) ........ 10

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 .......... 6

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-CV-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025), *appeal dismissed*, No. 25-4452, 2025 WL 2943080 (9th Cir. Oct. 3, 2025) .......... 7

*Knuttel v. Omaze, Inc.*,
572 F. Supp. 3d 866 (N.D. Cal. 2021) .......... 3

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 4

*Krottner v. Starbucks Corp.*,
406 F. App'x 129 (9th Cir. 2010) .......... 10

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) .......... 4

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal.Super. Mar. 13, 2024) .......... 6

*Lineberry v. AddShopper, Inc.*,
No. 23-CV-01996-VC, 2025 WL 551864 (N.D. Cal. Feb. 19, 2025) .......... 9

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 10

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 5

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) .......... 9

*Mirmalek v. L.A. Times Commc'ns LLC*,
No. 24-CV-01797, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .......... 6

*Mitchener v. CuriosityStream, Inc.*,
No. 25-CV-01471-NW, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) .......... 6, 7

*Murthy v. Missouri*,
603 U.S. 43 (2024) .......... 2

*Myers v. Bennett Law Offices*,
238 F.3d 1068 (9th Cir. 2001) .......... 3

*Palacios v. Office Depot, LLC*,
No. 24STCV11977, 2024 WL 7006626 (Cal.Super. Dec. 04, 2024) .......... 6

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 1, 8

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ........ 6

*Rodriguez v. California Highway Patrol*,
89 F. Supp. 2d 1131 (N.D. Cal. 2000) ........ 3

*Sanchez Mora v. U.S. Customs & Border Prot.*,
No. 3:24-CV-02430-TLT, 2024 WL 5378335 (N.D. Cal. Nov. 4, 2024) ........ 2

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 WL 487194 (Cal.Super. Jan. 27, 2025) ........ 6

*Shah v. Capital One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ........ 8, 9

*Silver v. Stripe Inc.*,
No. 4:20-CV-08196, 2021 WL 3191752 (N.D. Cal. July 28, 2021) ........ 7

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) ........ 9

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) ........ 9

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 1, 2

*In re: USA Today Co., Inc., Internet Tracking Litig.*,
No. 24-CV-05150-MMC, 2026 WL 932655 (N.D. Cal. Apr. 6, 2026) ........ 1

*Walsh v. Dollar Tree Stores, Inc.*,
No. 25-CV-01601-SVK, 2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) ........ 2, 3

*Wesch v. Yodlee, Inc.*,
No. 20-CV-05991, 2021 WL 1399291 (N.D. Cal. Feb. 16, 2021) ........ 7

**Statutes**

28 U.S.C. § 1391(b)(2) ........ 3

Cal. Penal Code § 631 ........ 3

Cal. Penal Code § 638.50 ........ 5

Cal. Penal Code § 638.50(b), (c) ........ 6

Cal. Penal Code § 638.51 ........ 5, 6

Cal. Penal Code § 638.52 ........................................................................................................ 5

# I. INTRODUCTION

Plaintiffs Theresa Stevens, Richard Mortensen, and Dennis Frasher's ("Plaintiffs") opposition serves only to highlight the Amended Complaint's fundamental pleading deficiencies, including improper venue, lack of Article III standing, and no viable claims for relief. The opposition rehashes the same generalized allegations of how third-party software purportedly operates across Edward Jones's Website and Online Access, and confirms that no amount of reframing can substitute for the required allegations grounded in Plaintiffs' actual experience. Plaintiffs' Amended Complaint should be dismissed.

# II. ARGUMENT

## A. Dismissal of Two of the Five Named Plaintiffs Underscores the Deficiencies of Plaintiffs' Standing Allegations

Plaintiffs insist that their allegations are "especially robust" because their Amended Complaint identifies the types of data disclosed to third parties when users interact with the Website or Online Access and the means of transmission through third-party software. Opp. at 4-5. Plaintiffs miss the point entirely. As the Ninth Circuit explained in *Popa*, "*TransUnion* contemplates a standing inquiry *particularized* to a plaintiff's circumstances and benchmarked to a specific tort." *Popa v. Microsoft Corp.*, 153 F.4th 784, 790-91 (9th Cir. 2025) (emphasis added). Describing how third-party software generally operates on the Website and Online Access to purportedly collect information from unspecified users—no matter how detailed—cannot substitute for the particularized inquiry involving Plaintiffs and their personal information. *See In re: USA Today Co., Inc., Internet Tracking Litig.,* No. 24-CV-05150-MMC, 2026 WL 932655, at *2 (N.D. Cal. Apr. 6, 2026) (finding no Article III standing where plaintiffs failed to identify specific personal information disclosed implicating protectable privacy interest).

Plaintiffs' opposition does not cure the fundamental deficiency that no named Plaintiff alleges how his or her own specific information was intercepted by any particular challenged software technology, in connection with any specific use of or communication with the Website or Online Access, or what specific information belonging to that Plaintiff was transmitted, when, and to whom. Instead, each Plaintiff offers only the same boilerplate allegation that Defendants allowed

disclosure of their "full transaction history to Google." Am. Compl. ¶¶ 32, 38, 50. The very cases Plaintiffs rely on—*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020), *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 480 (N.D. Cal. 2021), and *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1104 (S.D. Cal. 2025)—demand precisely what Plaintiffs fail to provide: an injury that "must affect the plaintiff in a personal and individual way."

The recent dismissal of Plaintiffs Mark Maurer and Chris Wall (*see* Dkt. Nos. 34-35) only compounds these deficiencies. The Amended Complaint lumps all named Plaintiffs together throughout, leaving the Court and Defendants to speculate whether any given allegation refers to the dismissed Plaintiffs, the remaining ones, or some combination thereof. That ambiguity bears directly on the standing analysis, since the Amended Complaint must plead facts sufficient to support each Plaintiff's standing, rather than indulge in group pleading that precludes the required plaintiff-by-plaintiff analysis that Article III requires. *See Murthy v. Missouri*, 603 U.S. 43, 60-61 (2024) (in multi-plaintiff case, each plaintiff's standing or lack thereof analyzed separately; rejecting analysis of standing "at a high level of generality"). To the extent the Amended Complaint's standing allegations support the claims of former Plaintiffs Maurer and Wall—precisely the question the Amended Complaint's group pleading leaves unanswered—their recent dismissal confirms that the Amended Complaint is inadequate to allow the Court to undertake the plaintiff-by-plaintiff analysis that Article III requires. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("standing is not dispensed in gross").

**B. Venue Remains Improper as to Plaintiffs Stevens and Mortensen**

"It is well-established that in most instances, the rule in a proposed class action is that each named plaintiff must independently establish venue." *Walsh v. Dollar Tree Stores, Inc.*, No. 25-CV-01601-SVK, 2025 WL 2939229, at *12 (N.D. Cal. Oct. 16, 2025) (internal quotation marks and citation omitted); *Sanchez Mora v. U.S. Customs & Border Prot.*, No. 3:24-CV-02430-TLT, 2024 WL 5378335, at *6 (N.D. Cal. Nov. 4, 2024) (collecting cases). *Walsh* is directly on point. There, in an analogous class action alleging improper placement of third-party cookies on defendant's website, the court dismissed two of the three named plaintiffs who resided in the Central and Southern Districts of California for improper venue, holding that the connections to the

Northern District of the properly venued plaintiff could not satisfy the venue burden for the others. *See Walsh*, 2025 WL 2939229, at *12. The same analysis applies here with equal force.

Plaintiffs' contrary cases say less than they suggest. *Armacost v. Depuy Synthes Sales, Inc.*, No. 18-CV-01331, 2018 WL 11471582 (N.D. Cal. June 7, 2018), predates *Walsh*'s principle that each named plaintiff must independently satisfy venue in a proposed class action and does not foreclose it. *Rodriguez v. California Highway Patrol*, 89 F. Supp. 2d 1131 (N.D. Cal. 2000), addressed only whether 28 U.S.C. § 1391(b)(2) permits venue in more than one district where a common policy is challenged – a question not at issue here. And *Beyard v. Pentagon Fed. Credit Union*, No. 1:21-CV-01063, 2025 WL 418706 (E.D. Cal. Feb. 6, 2025), acknowledged its departure from the "general rule" that "courts in multiple circuits, including the Ninth Circuit, have held that each plaintiff—or in the case of a class action, each named plaintiff—must show the district is a proper venue for the claims they assert[.]" *Id.* at *5.

Plaintiffs' fallback theory—that venue is independently established because third parties such as Google, Meta, and Trade Desk reside in this District and purportedly monetized Plaintiffs' data here—is unsupported. The substantiality inquiry under 28 U.S.C. § 1391(b)(2) "focuses on the relevant activities of the *defendant*," and "[o]nly the events that directly give rise to a claim are relevant." *Knuttel v. Omaze, Inc.*, 572 F. Supp. 3d 866, 869 (N.D. Cal. 2021) (internal quotation marks and citations omitted) (emphasis added). The purported downstream data monetization activities of third-party platforms are not Defendants' activities and do not directly give rise to Plaintiffs' claims. Moreover, the locus of Plaintiffs Stevens's and Mortensen's alleged injuries is in the Southern and Eastern Districts where they accessed the Website or Online Access, not here. *See Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001).

### C. Plaintiffs Fail to State a Claim under CIPA § 631 and the ECPA

Plaintiffs' opposition rests on three flawed premises regarding the allegations in the Amended Complaint: (1) that the alleged interception occurred while the contents were "in transit"; (2) that the "contents" of their communications were intercepted; and (3) that the crime-tort exception to the one-party consent rule applies. Each argument is legally and factually deficient.

*First*, Plaintiffs' opposition does not cure Plaintiffs' failure to plead any interception "in

transit." The Amended Complaint contains no allegations describing any specific interception of a specific Plaintiff's actual communication during transmission, when it occurred, what was captured in transit, or how any particular Plaintiff's data was routed to a third party before or simultaneously with its receipt by Defendants. Instead, the Amended Complaint relies entirely on generalized, website- and portal-wide descriptions of how the challenged third-party software purportedly operate, while asserting in various formulations that communications were "automatically" or "simultaneously" intercepted by third parties "in real time." Am. Compl. ¶¶ 10, 98, 182, 185, 197, 199. That is precisely the kind of conclusory recitation of statutory language that courts in this Circuit have found insufficient. *See Esparza v. Gen. Digit. Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 2024) (allegation that communications were intercepted "in real time" was a "conclusory parroting of the statute"); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1085 (C.D. Cal. 2023) (same). Plaintiffs' reliance on generalized "testing" and purported screenshots of records fares no better. Plaintiffs do not explain which portion of these testing results demonstrate "acquisition contemporaneous with transmission," as opposed to merely describing how they believe the Website and Online Access and third-party software operate and interact in the aggregate. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002).

*Second*, Plaintiffs do not dispute that their claim separately fails unless they allege facts showing that "content" was disclosed. Opp. at 5-6. Instead, Plaintiffs insist that they satisfied this requirement, relying on *Facebook Tracking*, 956 F.3d at 605, *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023), and *Casillas v. Six Flags Ent. Corp.*, No. 2:25-CV-6824, 2025 WL 3684543, at *5 (C.D. Cal. Dec. 15, 2025). But these cases are distinguishable. In *Facebook Tracking*, the Ninth Circuit found content sufficiently alleged because plaintiffs specifically alleged that the defendant collected URLs generated from search terms entered into Google's search engine that "could divulge a user's personal interests, queries, and habits on third-party websites operating outside of [defendant]'s platform." 956 F.3d at 605. In *Cousin*, the court sustained the claim only because plaintiffs specifically alleged that their personal search queries for specialty healthcare providers and treatments for medical conditions were intercepted – data that, unlike mere "usage and engagement" information, conveyed the actual substance of sensitive medical communications.

702 F. Supp. 3d at 976. And in *Casillas*, the court found content sufficiently alleged because the plaintiff specifically alleged interception of a combination of "search queries," "products searched for," "user interests," and "browsing habits" – data communicating the substance of what the user was actually seeking. 812 F. Supp. 3d at 1029. Here, by contrast, no Plaintiff identifies what particular communication of theirs was intercepted, what specific data was captured, or why that data conveyed the "substance, purport, or meaning" of a communication. *See id.* at 1028.

*Third*, Plaintiffs do not dispute that the crime-tort exception requires an independent tortious purpose beyond the act of interception itself. Instead, Plaintiffs argue that the exception applies here because Defendants had an independent prohibited purpose to disclose data to third parties. Opp. at 7. But that argument assumes the underlying conduct was tortious in the first place. As set forth above, Plaintiffs fail to adequately allege the predicate elements of a wiretap violation, and without a plausible underlying violation, there is no tortious purpose to speak of, and the crime-tort exception has nothing to attach to. Moreover, Plaintiffs' Amended Complaint itself forecloses the exception with allegations that Defendants "intentionally incorporated Tracking Technologies" to "use the analytics and advertising services offered by these third parties to serve targeted advertisements . . . and, consequently, make more money." Am. Compl. ¶ 53. This claimed financial motivation, coupled with Plaintiffs' failure to allege specific facts showing an intent to injure Plaintiffs tortiously, precludes application of the crime-tort exception. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022); *In re Google Inc. Gmail Litig.*, No. 13-md-02430-LHK, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014).

**D. Plaintiffs' CIPA §§ 638.50 and 638.51 Claim Remains Deficient**

Plaintiffs' opposition ignores the plain text and structure of CIPA § 638.51 and its supporting sections, which were enacted to regulate telephone surveillance—not internet activity—and repeatedly reference "telephone lines" and "telephone numbers"—not websites or software technologies. For example, CIPA § 638.52 requires that any order authorizing a trap-and-trace device must identify the person "in whose name . . . the ***telephone line*** to which the pen register . . . is to be attached." *See* Mot. at 10-11 (emphasis added). This language is unambiguous: the statute presumes a physical attachment to a telephone line, confirming its intended scope. Plaintiffs make

no attempt to reconcile their theory with this requirement or to explain how third-party software embedded in the Website or Online Access could ever be "attached" to a telephone line.

Plaintiffs cite cases such as *Harris v. iHeartMedia, Inc.*, No. 25-cv-06038, 2026 WL 247875, at *3 (N.D. Cal. Jan. 29, 2026), *Mirmalek v. L.A. Times Commc'ns LLC*, No. 24-CV-01797, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024), and *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1092-94 (N.D. Cal. 2025), to argue that § 638.51 may apply to software technologies. Opp. at 8-9. But none of these decisions meaningfully analyze § 638.51's text, the other CIPA provisions, the legislative history, or policy implications. By contrast, Defendants' interpretation is grounded in statutory language, legislative intent, and judicial precedent. Plaintiffs' reading would criminalize routine website functionality such as collecting IP addresses or URLs and expose countless businesses to liability for standard internet practices. That is not what the Legislature intended. Recent California decisions confirm this understanding. *See Heiting v. HP Inc.*, No. 24STCV29634, 2025 WL 2993673 (Cal.Super. Aug. 01, 2025); *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194 (Cal.Super. Jan. 27, 2025).

Even if § 638.51 could be stretched to reach internet activity, Plaintiffs still fail to plead a cognizable claim because they allege only the collection of IP addresses, cookies, and user or device identifiers. Courts have repeatedly held that such information does not implicate a protectable privacy interest and is insufficient to establish statutory injury. *See Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179; *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Cal.Super. Mar. 13, 2024); *Palacios v. Office Depot, LLC*, No. 24STCV11977, 2024 WL 7006626, at *3 (Cal.Super. Dec. 04, 2024). Plaintiffs' effort to relabel this routine metadata as actionable "addressing information" does not change that conclusion.

Finally, Plaintiffs' assertion that CIPA § 638.51 applies even where the software technologies capture "contents" collapses under the statute's own definitions. Pen registers and trap-and-trace devices, by definition, do not capture contents. Cal. Penal Code § 638.50(b), (c). Judge Wise squarely rejected Plaintiffs' attempt to avoid this boundary, holding that if software captures content it falls outside § 638.51 entirely, and if it captures only metadata such as IP addresses the plaintiff lacks a cognizable privacy claim. *See Mitchener v. CuriosityStream, Inc.*,

No. 25-CV-01471-NW, 2025 WL 2272413, at *4 (N.D. Cal. Aug. 6, 2025); *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473-NW, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025), *appeal dismissed*, No. 25-4452, 2025 WL 2943080 (9th Cir. Oct. 3, 2025). Plaintiffs' attempt to dismiss *Mitchener* and *Kishnani* as outliers does not make it so. On the contrary, these decisions reflect a straightforward application of the statute's own text, and Plaintiffs' contrary reading simply cannot be squared with the statute's plain language.

### E. Plaintiffs Fail to State a Claim for Invasion of Privacy

Plaintiffs do not dispute the governing standard—a reasonable expectation of privacy and a highly offensive intrusion—but fail to satisfy both requirements.

Plaintiffs rely on *Silver v. Stripe Inc.*, No. 4:20-CV-08196, 2021 WL 3191752, at *6 (N.D. Cal. July 28, 2021) and *Wesch v. Yodlee, Inc.*, No. 20-CV-05991, 2021 WL 1399291, at *3 (N.D. Cal. Feb. 16, 2021), for the proposition that consumers have a reasonable expectation of privacy in financial data. Opp. at 11. But both cases are materially distinguishable. In *Wesch*, plaintiffs alleged the defendant obtained users' bank login credentials under the guise of facilitating payment transactions, then retained those credentials without consent to access and extract account transaction history on an ongoing basis—even after users severed their relationship with the relevant financial institution—and aggregated and sold that data to third parties. 2021 WL 1399291, at *1-2. In *Silver*, plaintiffs alleged the defendant collected users' comprehensive financial and behavioral profiles—including payment declines, fraud flags, and purchase histories across its entire merchant network—and compiled them into a report with an assigned "Risk Score," which was then shared across its entire merchant network without disclosure to users. 2021 WL 3191752, at *1-2, 6. Both cases thus involved ongoing, covert interception and transmission of core financial account credentials and data, far beyond what any user could reasonably anticipate.

The Amended Complaint here describes a fundamentally different scenario. Plaintiffs' allegations center on routine technical data—page view events, URLs, IP addresses, cookie values, and user and device identifiers—the kind of information necessarily and knowingly transmitted to third parties as a basic condition of using the internet. Mot. at 12. Plaintiffs attempt to elevate their claim by gesturing toward account balances and transaction details, but as Defendants highlighted

in their motion (Mot. at 12), those allegations are conclusory and untethered to the actual experience of any named Plaintiff on the Website or Online Access. *See* Am. Compl. ¶¶ 118-125.

Plaintiffs' reliance on *Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 WL 1939957, at *10 (N.D. Cal. July 14, 2025) and *Popa*, 153 F.4th 784 is also misplaced. Opp. at 11. The *Gabrielli* court's reluctance to dismiss at the pleading stage was driven in part by the plaintiff's specific allegation that defendant's tracking practices persisted even after he affirmatively clicked "Reject All"—a claim not alleged here. 2025 WL 1939957, at *1, 10. And *Popa*, which Plaintiffs cite for the proposition that collection of financial information through tracking technology *could* be offensive, expressly declined to reach that issue, and instead affirmed dismissal because plaintiff failed to explain "how the tracking of her interactions with the PSP website caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable. . . ." 153 F.4th at 791. The same failure exists here. *See* Mot. at 13.

### F. Plaintiffs Lack Statutory Standing Under the UCL and CDAFA

Plaintiffs' opposition does not justify their failure to allege a cognizable economic harm required for standing. Their first argument concerning the purported diminution in value of their personal information fails because Plaintiffs do not allege any facts suggesting they ever intended to sell their data, attempted to do so, or were deprived of an opportunity to monetize it. Courts have consistently rejected similar efforts to satisfy the UCL or CDAFA standing requirements through abstract assertions about the generalized loss of control or value of their data. *See Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1047-48 (N.D. Cal. 2025) (dismissing CDAFA and UCL claims because, among other reasons, plaintiffs failed to plead "that they ever attempted or intended to participate in the market for the information [d]efendant disclosed or that they derived economic value from that information" (internal quotation marks and citation omitted)); *Cottle*, 536 F. Supp. 3d at 487-88 ("Plaintiffs offer no support for their theories that the loss of the right to control their own data, the loss of the value of their data, and the loss of the right to protection of the data . . . is 'damage or loss' within the meaning of the CDAFA."). The contrary cases Plaintiffs cite are factually inapposite or outliers that courts subsequently have declined to follow. *See*, *e.g.*, *Gerber v. Twitter, Inc.*, No. 4:23-CV-00186-KAW, 2024 WL 1354449, at *7 (N.D. Cal. Mar. 29, 2024)

(finding *Brown* inapposite because it "involved allegations that Plaintiffs had been induced to give Google their data without payment, and that they would have demanded payment had they known that Google had previously paid individuals for their browsing histories.").

Plaintiffs' second argument concerning Defendants' purported unjust profits fares no better. A defendant's alleged misappropriation and monetization of data cannot establish standing absent a corresponding loss to the plaintiff. *Shah*, 768 F. Supp. 3d at 1048. Plaintiffs do not explain "how or why" they "suffer[ed] an economic loss every time their data [was] used and shared" and "whether [they] can still sell their data if [Defendants] already ha[ve] it." *Lineberry v. AddShopper, Inc.*, No. 23-CV-01996-VC, 2025 WL 551864, at *2 (N.D. Cal. Feb. 19, 2025).

Finally, Plaintiffs' assertion that they would have paid less, or not paid at all, had they known of the alleged disclosure of data is wholly conclusory and devoid of supporting facts—namely, what Plaintiffs paid, for what services, and what portion of those payments were supposedly privacy-related—and thus is not entitled to consideration at this stage.

**G. Plaintiffs Fail to State a Viable Negligence Claim**

Plaintiffs do not dispute that California courts have concluded that where (as here) there is no "physical harm (i.e., personal injury or property damage)," the economic loss rule applies. *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,* 903 F. Supp. 2d 942, 959-61 (S.D. Cal. 2012) (holding that economic loss doctrine bars claims of damages based on alleged exposure of plaintiffs' personal information, because such harms do not involve physical damage). Instead, Plaintiffs cite three cases suggesting certain privacy injuries are not "necessarily" economic in nature. But two of those cases—*Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 913 (S.D. Cal. 2020) and *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1142 (C.D. Cal. 2021)—arose in materially different contexts involving medical information disclosures and do not establish a categorical carve-out that allows a negligence claim to proceed whenever "privacy" is invoked. And Plaintiffs' reliance on *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1020 (N.D. Cal. 2024) is especially inappropriate because the defendant there insisted "that plaintiffs' injuries do not constitute the 'loss of money or property,'" *id.* at 1020, meaning that the issue was not truly before the court. Here, Plaintiffs' claimed losses are purely economic.

Plaintiffs next argue that the economic loss rule does not apply because Defendants' duty does not arise from any contractual obligation. Opp. at 14. But this argument depends on the implausible premise that Plaintiffs, who allege longstanding financial account relationships with Edward Jones, had no governing contractual agreement with Defendants. Account relationships of this nature cannot exist in a contractual vacuum and necessarily involve agreements governing the terms of the relationship. The Court need not accept an allegation that is not "plausible on its face" in light of the nature of the relationship Plaintiffs themselves describe. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Additionally, Plaintiffs argue that the alleged disclosure and use of their data constituted a completed tort causing actual privacy harm at that time. Opp. at 14. But as discussed in Defendants' motion (Mot. at 6) and above (section II.A), Plaintiffs' Amended Complaint offers no particularized allegations connecting any Plaintiff's own data to any specific interception by the challenged third-party software. Without those allegations, Plaintiffs cannot identify any "appreciable, nonspeculative, present harm" purportedly caused by the breach of Defendants' alleged duties. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1032 (N.D. Cal. 2012). The only harm Plaintiffs can point to, then, is the generalized risk that their data may be misused in the future, which is precisely the kind of prospective injury that courts have found insufficient to support a negligence claim. *See Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010).

### H. Plaintiffs Fail to Allege Unjust Enrichment

Plaintiffs argue that their unjust enrichment claims are plausibly pled because Defendants received a benefit at their expense and legal remedies are inadequate to redress that harm. Opp. at 15. This argument fails for two independent reasons. First, unjust enrichment is not a standalone cause of action. It is an equitable remedy, not a substantive claim. *See* Mot. at 15. Second, even if it were available, unjust enrichment requires that legal remedies be inadequate. Plaintiffs allege no facts showing that their legal remedies are insufficient. To the contrary, they seek damages under multiple legal theories. Where adequate legal remedies exist, equitable relief is unavailable. *See id.*

## III. CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss.

Dated: April 27, 2026

K&L Gates LLP

By: */s/Michael J. Stortz*
Michael J. Stortz
Tae H. Kim
K. Taylor Yamahata

Attorneys for Defendants
EDWARD D. JONES & CO., L.P
and THE JONES FINANCIAL
COMPANIES, L.L.L.P