Robert C. Schubert S.B.N. 62684
Willem F. Jonckheer S.B.N. 178748
Amber L. Schubert S.B.N. 278696
Sonum Dixit S.B.N. 353395
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union Street, Suite 200
San Francisco, CA 94123
Tel.: (415) 788-4220
Fax: (415) 788-0161
rschubert@sjk.law
wjonckheer@sjk.law
aschubert@sjk.law

Christian Levis (admitted *pro hac vice*)
Amanda Fiorilla (admitted *pro hac vice*)
Rachel Kesten (admitted *pro hac vice*)
Yuanchen Lu (admitted *pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com
ylu@lowey.com

Alec M. Leslie (admitted *pro hac vice*)
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel.: (646) 837-7126
aleslie@bursor.com

Joshua R. Wilner S.B.N. 353949
**BURSOR & FISHER, P.A.**
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Tel.: (925) 300-4455
jwilner@bursor.com

*Attorneys for Plaintiffs and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE EDWARD D. JONES & CO. DATA PRIVACY LITIGATION | Case No: 3:26-cv-01178-JD<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE** |

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 2

A. Edward Jones's Connections to the Forum ........ 2

B. The Purported Account Agreements From 2018 ........ 2

C. The Edward Jones Online Access Sign-Up Process as of June 1, 2020 ........ 3

D. Plaintiffs Would Need to Cross-Reference Documents from Years Prior ........ 5

III. LEGAL STANDARD ........ 6

IV. ARGUMENT ........ 6

A. Plaintiffs' Claims Do Not Arise Out of or Relate to the Account Agreements ........ 6

B. No Provisions Are Incorporated by Reference into the Online Access Terms ........ 9

C. The Venue Provision Is Separate from the Arbitration Provision ........ 10

D. Edward Jones Cannot Show Plaintiff Frasher Agreed to Any Online Access Terms 10

E. Plaintiff Shah Cannot Be Bound by Forum Selection Clauses in Agreements He Never Signed ........ 11

F. Other Factors Weigh Against Transfer ........ 13

G. Edward Jones Has Waived the Right to Compel Arbitration ........ 15

V. CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Aspen Ins. UK Ltd. v. Brown & Brown, Inc.*,
No. CV10-07892-MMM (JCGx), 2011 WL 13217776 (C.D. Cal. May 2, 2011) ........ 14

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W.D. Tex.*,
571 U.S. 49 (2013) ........ 6

*Beltran v. Nationstar Mortgage LLC*,
No. 25-CV-04412-JSC, 2026 WL 637337 (N.D. Cal. Mar. 6, 2026) ........ 8, 9

*Bromlow v. D & M Carriers, LLC*,
438 F. Supp. 3d 1021 (N.D. Cal. 2020) ........ 8, 12

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ........ 13

*Clark-Alonso v. Sw. Airlines Co.*,
440 F. Supp. 3d 1089 (N.D. Cal. 2020) ........ 7

*Cole v. Quest Diagnostics Inc.*,
No. 1:22-cv-00892-JLT SKO, 2023 WL 6201702 (E.D. Cal. Sept. 22, 2023) ........ 8, 9

*Crano v. Sojern, Inc.*,
No. 3:25-CV-02600-JSC, 2025 WL 2689267 (N.D. Cal. Sept. 19, 2025) ........ 11

*Cung Le v. Zuffa, LLC*,
108 F. Supp. 3d 768 (N.D. Cal. 2015) ........ 12

*Dawson v. Target Corp.*,
No. 3:24-CV-08167-AMO, 2025 WL 1651940 (N.D. Cal. June 11, 2025) ........ 11

*Doe v. Epic Games, Inc.*,
435 F. Supp. 3d 1024 (N.D. Cal. 2020) ........ 6

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
972 F.3d 1101 (9th Cir. 2020) ........ 13

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ........ 6

*Hall v. Hall*,
584 U.S. 59 (2018) ........ 13

*Hill v. Xerox Bus. Servs., LLC*,
59 F.4th 457 (9th Cir. 2023) ........ 15

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
485 F.3d 450 (9th Cir. 2007) ..... 12

*In re Orange, S.A.*,
818 F.3d 956 (9th Cir. 2016) ..... 10

*In re Rolls Royce Corp.*,
775 F.3d 671 (5th Cir. 2014) ..... 12

*J. G. Link & Co. v. Cont'l Cas. Co.*,
470 F.2d 1133 (9th Cir. 1972) ..... 13

*J. G. v. Rustic Pathways LLC*,
No. 22-cv-05666-EJD, 2024 WL 1975472 (N.D. Cal. May 2, 2024) ..... 8

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) ..... 7, 12

*Johnson v. Walmart Inc.*,
57 F.4th 677 (9th Cir. 2023) ..... 7

*Joiner v. NHL Enterprises, Inc.*,
No. 23-CV-2083 (LAK) (BCM), 2025 WL 2846431 (S.D.N.Y. Aug. 29, 2025) ..... 14

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ..... 10

*Losson v. Union des Associations Europeennes de Football*,
No. 23-CV-06500-JSC, 2024 WL 3406987 (N.D. Cal. July 11, 2024) ..... 8, 9

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
858 F.2d 509 (9th Cir. 1988) ..... 8, 12

*New Image Painting, Inc. v. Home Depot U.S.A., Inc.*,
No. SACV 09-1224, 2009 WL 4730891 (C.D. Cal. Dec. 7, 2009) ..... 10

*Perez v. DirecTV Grp. Holdings, LLC*,
251 F. Supp. 3d 1328 (C.D. Cal. 2017) ..... 9

*Pirozzi v. Fiserv Corp.*,
668 F. Supp. 3d 968 (C.D. Cal. 2022) ..... 7

*Plows v. Rockwell Collins, Inc.*,
812 F. Supp. 2d 1063 (C.D. Cal. 2011) ..... 15

*Richardson v. MYW Holdings, LLC*,
No. 3:15-CV-00365-RCJ-WGC, 2015 WL 7185460 (D. Nev. Nov. 13, 2015) ..... 10

*Rootstrap, Inc. v. Rubenstein*,
No. CV 22-730 DMG (RAOx), 2022 WL 17254352 (C.D. Cal. Sept. 12, 2022) ..... 9

*Shah v. Hilton Worldwide Holdings, Inc.*,
No. 25-cv-01018-EKL, 2026 WL 45093 (N.D. Cal. Jan. 7, 2026) ... 8, 9

*Smith v. Midwest Tape LLC*,
No. 24-cv-08805-JD, 2026 WL 482856 (N.D. Cal. Feb. 20, 2026) ... 8

*Tao v. Murphy*,
812 F. Supp. 3d 1117 (D. Nev. 2025) ... 7

*Trujillo v. GT USA, Inc.*,
No. C-09-5179, 2010 WL 809505 (N.D. Cal. Mar. 5, 2010) ... 13

*White v. PayPal Holdings Inc.*,
No. 25-CV-04884-PCP, 2026 WL 496712 (N.D. Cal. Feb. 23, 2026) ... 11

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
901 F.3d 1081 (9th Cir. 2018) ... 8

## I. INTRODUCTION

Once again, Defendants Edward D. Jones & Co., L.P. and The Jones Financial Companies, L.L.L.P. (collectively, "Edward Jones") move to transfer this action from the Northern District of California to the Eastern District of Missouri based on venue provisions buried in Account Agreements (defined herein) that have nothing to do with Plaintiffs' claims. ECF No. 48-2 (hereinafter the "Motion" or "Mot."). There are a multitude of issues with this argument, each of which supports denying Edward Jones's Motion in its entirety.

At the outset, the Account Agreements Edward Jones relies on only govern disputes about financial accounts, fees, distributions, advisory services, and other disputes concerning the investment services Edward Jones provides to customers. Plaintiffs' claims, by contrast, arise from tracking technology that Edward Jones embedded in its website and online portal—conduct that, if anything, is governed by the Online Access Terms that Plaintiffs Stevens and Frasher did not encounter until years after signing their Account Agreements. Thus, nothing in these Account Agreements alone provides a basis to transfer Plaintiffs' separate claims to another district.

The separate Online Access Terms *also* are not a basis to transfer this action to the Eastern District of Missouri because they do *not* contain any forum selection clause or venue provision. Rather, they contain only a single, passing reference to an "arbitration agreement" in the separate Account Agreements. Edward Jones is not seeking to compel arbitration.

The traditional factors considered on a motion to transfer—which Edward Jones largely ignores—also weigh in favor of denying Edward Jones's Motion. Plaintiffs chose this forum, and Edward Jones has not shown this location is inconvenient or that its witnesses and evidence are not located here. Moreover, California undoubtedly has an interest in this case. This is because a majority of Plaintiffs' claims are brought under California statutes—including CIPA and the Unfair Competition Law—on behalf of a California subclass, and California courts are best positioned to apply these laws. Indeed, Edward Jones itself has signaled it may argue that Missouri law governs, underscoring the risk that transferring this case would deprive Plaintiffs and California Class Members of the protections California law affords them.

For each of these reasons, Plaintiffs respectfully request that this Court deny Edward Jones's Motion in its entirety.

## II. FACTUAL BACKGROUND

### A. Edward Jones's Connections to the Forum

Edward Jones provides its public-facing website and password-protected customer portal to individuals in California, including Plaintiffs Stevens, Frasher, and Shah. ¶¶ 2, 19-22, 25-48.[1] Plaintiff Frasher, in particular, resides in this District, where he frequently used Edward Jones web properties. ¶¶ 33, 36. Accordingly, Plaintiff Frasher had his private and identifiable communications, including full transaction histories, intercepted by third parties from this forum. ¶¶ 37-38, 134.

Edward Jones agreed with, conspired with, and enabled third parties, including Google, Meta, and LinkedIn—each of which resides in this District—to intercept Plaintiffs' and Class Members' data. ¶¶ 20-23, 72-74, 120-127; Declaration of Amanda Fiorilla ("Fiorilla Decl.") ¶¶ 5-7. Each of these third parties received Plaintiffs' and Class Members' data within the forum and monetized and used this data from the Northern District of California. ¶¶ 23, 80-82, 90-93, 97-100. Accordingly, Google, Meta, and LinkedIn will each have evidence highly relevant to this case, including copies of Plaintiffs' and the Class's data, and internal documents reflecting how each of these entities used this data for their own purposes, including ad optimization and user profiling. Each of these entities is within the subpoena power of this Court, which is especially important should this case go to trial.

It remains unknown where Edward Jones's employees with knowledge of the facts relevant to this case reside or where relevant evidence is located. Edward Jones has not disclosed this information in its Motion, but it appears from public documents that its top employees and C-suite are scattered across the country, as well as Canada. *See* Fiorilla Decl. ¶¶ 8-10.

### B. The Purported Account Agreements From 2018

According to a paralegal at Edward Jones (*see* Declaration of Forrest Webber ("Webber Decl."), ECF No. 48-3 ¶ 2), Plaintiffs Stevens and Frasher signed up for various Edward Jones accounts on the following dates:

---

[1] "¶" or "Complaint," as used herein refers to the Consolidated Class Action Complaint, ECF No. 47.

| Plaintiff | Terms | Date |
|---|---|---|
| Theresa Stevens | [redacted] Agreement (“[redacted] Agreement”) | November 16, 2018 |
| | [redacted] Agreement (“[redacted] Agreement”) | November 16, 2018 |
| Dennis Frasher | [redacted] Agreement | August 20, 2018[2] |

There is no indication of *how* these terms were presented to Plaintiffs, including whether they were presented by themselves or bundled with additional documents at the same time. Likewise, there is no evidence showing whether Plaintiffs were given sufficient time to review these agreements or if they were presented with these terms on a take-it-or-leave-it basis with just minutes to sign.

More fundamentally, these agreements do not govern or relate to Plaintiffs' claims in this action. For instance, the [redacted] Account Agreement states that the "arbitration provision" only applies to controversies "arising out of or relating to" (1) actual "account(s);" (2) "business, transactions or relationships" with Edward Jones and its "officers, directors, partners, agents, affiliates and/or employees;" (3) the actual [redacted] Account "Agreement" or breaches thereof; or (4) transactions or accounts with "predecessor[s] or successor[s][.]"[3] *See* Webber Decl. ¶ 8.

Further confirming the limitations of this agreement is Plaintiff Shah's use of the Edward Jones website, https://www.edwardjones.com/, on which he completed a financial-advisor matching quiz and had his private communications intercepted by third parties' tracking technology. ¶¶ 43-48. None of the privacy violations Plaintiff Shah suffered related to any Account Agreement because Plaintiff Shah never signed any agreement with Edward Jones. Webber Decl. ¶ 5 (admitting that Edward Jones "has no records" that Shah was a client).

### C. The Edward Jones Online Access Sign-Up Process as of June 1, 2020

Edward Jones's Declarant David Ham purports to describe what he calls the process to sign up for "Online Access" as of June 1, 2020. *See* Declaration of David Ham ("Ham Declaration" or "Ham Decl."), ECF No. 48-4 ¶¶ 5-14. This includes screenshots that Mr. Ham claims Edward Jones

---

[2] *See* Webber Decl. ¶¶ 6-14.

[3] The [redacted] Agreements signed by Plaintiffs Stevens and Frasher contain identical language. *See* Webber Decl. ¶¶ 11, 14.

customers would allegedly see while signing up. *Id*. It is unclear where Mr. Ham obtained these screens or if they are, in fact, representative of the actual sign-up process as of June 1, 2020. His declaration does not say where he obtained these screens or what he did to verify their accuracy.

The Ham Declaration also does not show the full "Online Access Terms" that are allegedly presented to Edward Jones customers during this sign-up process. *Id*. ¶ 9. Rather, the Ham Declaration only shows the bottom of these terms, which omits over *40 other paragraphs* presented on the same screen, ranging from linking external accounts to confidentiality provisions. *Compare* Ham Decl. ¶ 9 *with* Ham Decl., Ex. A (showing the terms in PDF version, which includes all provisions). The final provision of these terms allegedly states:

> You agree that the arbitration agreement contained within the Account Agreement applies to any controversies or disputes arising out of or relating to your use of Online Access, or to these Terms, or any breach thereof.

Ham Decl. ¶ 9. The Ham Declaration also represents that Edward Jones customers must "scroll through the Online Access Terms" before they are able to proceed. *Id*. ¶¶ 9-10. It is unclear from this declaration what Mr. Ham's basis is for that claim. It is also unclear if there are additional steps Edward Jones customers must complete to sign up for Online Access.

The Ham Declaration further claims that Edward Jones customers who signed up prior to June 1, 2020 were presented with the updated Online Access Terms upon logging into Online Access after that date. *See* Ham Decl. ¶¶ 15-19. While Mr. Ham presents an undated screenshot of what purports to be a notice that users would encounter at login, the screenshot does not show how this notice was displayed on a regular screen, such as its size relative to the website as a whole or the existence of any surrounding distractions. *Id*. ¶ 16. According to Mr. Ham, Plaintiff Frasher enrolled in Online Access prior to June 1, 2020. *Id*. ¶ 29 (claiming he completed a "Login," not that he "enrolled"). Accordingly, it is unclear how he was presented with the "updated Online Access Terms."

Mr. Ham also asserts that he "reviewed" certain records reflecting when Plaintiffs Stevens and Frasher signed up for Online Access or accepted the new Online Access Terms after June 1, 2020. *See* Ham Decl. ¶¶ 20-29. It is unclear, as Mr. Ham does not explain, what system or database these records come from. Nevertheless, Mr. Ham claims that Plaintiffs signed up for or agreed to the post-

June 2020 terms on the following dates:

| Plaintiff | Alleged Action | Date |
|---|---|---|
| Theresa Stevens | "Enrollment – Accept Terms and Conditions" | October 15, 2025 |
| Dennis Frasher | "Login – Accept DCX Mega Terms and Conditions" | September 17, 2020[4] |

Mr. Ham claims that "Enrollment – Accept Terms and Conditions" reflects consent by new enrollees, whereas "Login – Accept DCX Mega Terms and Conditions" reflects updated consent by existing users. Ham Decl. ¶¶ 22-23. Mr. Ham does not describe the internal recording system that generates these entries or explain what actions would trigger the creation of these logs.

**D. Plaintiffs Would Need to Cross-Reference Documents from Years Prior**

As described in Sections II.B-C, each Plaintiff who allegedly signed an Account Agreement enrolled or logged in to Online Access _*years after*_ signing up for an Edward Jones Account. *See* Sections II.B-C (Plaintiff Stevens allegedly signed up for Online Access nearly seven years after signing up for [redacted] Account and [redacted] Account); *id*. (Plaintiff Frasher allegedly signed up for Online Access two years after signing up for a [redacted] Account).

The Online Access Terms, if Edward Jones's representations were accepted as true, directed Plaintiffs only to the "arbitration agreement" found in their "Account Agreement," and contained no reference to any forum selection clause. Ham Decl., Ex. A. There is no indication that Edward Jones provided access to any "Account Agreement" at the time Plaintiffs were presented with the Online Access Terms. Ham Decl. ¶¶ 5-19. Thus, Plaintiffs would need to find paper copies—if they were ever given them—of these agreements from years ago to cross-reference this provision to read its terms. None of these Plaintiffs would be able to access these Account Agreements online either because Edward Jones only provides customers with copies of agreements signed within the last 12 months. *See* Fiorilla Decl. ¶ 4.

[4] Ham Decl. ¶¶ 25-29.

**FIGURE 1**




## III. LEGAL STANDARD

A district court has the discretion to transfer a case to another appropriate district provided that it is "a *more* convenient forum." *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1041 (N.D. Cal. 2020) (emphasis added). Courts consider "(1) the plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) relative court congestion and time to trial in each forum." *See Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1042 (S.D. Cal. 2023). A court may afford "great weight" to plaintiffs' choice of forum. *Id.* (citation omitted).[5]

## IV. ARGUMENT

### A. Plaintiffs' Claims Do Not Arise Out of or Relate to the Account Agreements

Edward Jones cannot plausibly argue that Plaintiffs' claims relate to the Account Agreements. As described in Section II.B, both the [redacted] Account Agreement and [redacted] Agreement relate to disputes arising from Plaintiffs' actual financial accounts and use of financial advisors, such as disputes over unnecessary fees or risky investments, whereas Plaintiffs' claims here arise from tracking technology Edward Jones embedded in the Edward Jones website and online portal. ¶¶ 1-14. Using the Edward Jones website and online portal is entirely optional and, according to Edward Jones's own declarant, governed by separate terms. *See* Ham Decl. ¶ 6 (showing how Edward Jones clients may "Sign up" for "Online Access"); *id.* ¶¶ 13, 16 (claiming separate terms govern "Online Access"). Indeed, Plaintiffs Stevens and Frasher did not sign up for or use Edward Jones's online

---

[5] *Atlantic Marine* does not apply here, as Edward Jones suggests (Mot. at 5-6 (citing *Atl. Marine Constr. Co. v. U.S. Dist. Court for W.D. Tex.*, 571 U.S. 49, 62 (2013))), because the forum selection clause does not apply to Plaintiffs' and Class Members' claims in the first place. *See* Section IV.A.

services until years after signing up for Edward Jones accounts. *See* Section II.C.

Thus, the Account Agreements are not a basis to transfer this action because they simply have nothing to do with the claims alleged in this action, no matter how many times Edward Jones repeats the word "any." *See* Mot. at 7; *see also Clark-Alonso v. Sw. Airlines Co.*, 440 F. Supp. 3d 1089, 1094 (N.D. Cal. 2020) (finding claims for unlawful recording of phone calls do not fall within terms that govern "[a]ny and all" matters relating to the airline company's membership program because they do not involve "the interpretation or performance" of these terms); *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1101-02 (9th Cir. 2023) (Amazon's wiretapping of Flex drivers' private Facebook groups was "wholly unrelated to" plaintiff's "contract as a driver" for Amazon Flex, despite it purports to govern "any dispute or claim" "relating in any way to this Agreement"); *Tao v. Murphy*, 812 F. Supp. 3d 1117, 1128 (D. Nev. 2025) (terms that plaintiff agreed to by "hav[ing] his own Airbnb account" "ha[ve] no connection" to and do not govern plaintiff's claim for Airbnb's failure to prevent misuse of his property, despite they purport to cover "any dispute" relating to the terms or "any use of the Airbnb Platform"); *Johnson v. Walmart Inc.*, 57 F.4th 677 (9th Cir. 2023) (finding "in-store engagement with Walmart" does not fall within the terms of use that "regulate use of Walmart's online resources and content" which purport to encompass "all disputes" related to the terms "or any aspect of the relationship between you and Walmart").

The allegations that Edward Jones points to only confirm that the privacy violations at issue in this case relate not to Plaintiffs' status "as account owners," but rather to their status as visitors to "the Edward Jones Properties" who "communicated" private information to Edward Jones. *See* Mot. at 7-8; *see also* ¶¶ 245-49. Indeed, "Edward Jones Properties" as used throughout the Complaint refer to not only the "web-based portal" that only an "existing client" can use (Ham Decl. ¶¶ 3-4), but also "https://www.edwardjones.com/," the access to which does not require any preexisting account at all. *See, e.g.,* ¶¶ 1-10, 27-28, 35-36, 43-45.

Edward Jones's own authority does not support its position that Plaintiffs' claims arise out of or relate to the Account Agreements. For example, in *Pirozzi v. Fiserv Corp.*, 668 F. Supp. 3d 968, 974 (C.D. Cal. 2022), the court found the claims arose out of the agreement because they were actually

"predicated on allegedly false promises made in the Agreement" and "obligations . . . arising under the Agreement" including claims for breach of fiduciary duty, fraud, and breach of contract. Three of the other cases Edward Jones relies on follow the same pattern. *See* Mot. at 6-7 (citing *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018) (claims related to Share Purchase Agreement because securities investment at issue in the case was made "pursuant to" the Share Purchase Agreements); *Bromlow v. D & M Carriers, LLC*, 438 F. Supp. 3d 1021, 1028 (N.D. Cal. 2020) (wage and hour claims arose out of agreement defining relationship between "CARRIER" and "CONTRACTOR"); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) ("[T]ortious interference with contractual relations" claims require analysis of "rights and duties enumerated in" the "exclusive dealership contract[.]")). Unlike in *Sun*, *Bromlow*, or *Manetti-Farrow*, the Account Agreements here relate to fees, expenses, taxes, distributions, the designation of beneficiaries, and the like, none of which is at issue in this case. In the other two cases Edward Jones cites, the scope of agreements was either conceded or not discussed at all. *See* Mot. at 8, 10 (citing *J. G. v. Rustic Pathways LLC*, No. 22-cv-05666-EJD, 2024 WL 1975472, at *5 (N.D. Cal. May 2, 2024) (plaintiff conceded her claims arose out of the "Participant Agreement"); *Smith v. Midwest Tape LLC*, No. 24-cv-08805-JD, 2026 WL 482856, *2 (N.D. Cal. Feb. 20, 2026) (analysis focused on the existence of waiver, not scope of the agreement)).

The remaining cases Edward Jones cites confirm the type of language and agreements that *are considered* sufficient to cover websites and online services. *See Beltran v. Nationstar Mortgage LLC*, No. 25-CV-04412-JSC, 2026 WL 637337, at *8 (N.D. Cal. Mar. 6, 2026) (finding agreement covered website use because it expressly stated it applied to the "*use of the . . . websites and mobile apps*") (emphasis added); *Cole v. Quest Diagnostics Inc.*, No. 1:22-cv-00892-JLT SKO, 2023 WL 6201702 (E.D. Cal. Sept. 22, 2023) (plaintiffs' claims related to MyQuest account terms because these are the terms "a website user must accept to create an account and access MyQuest"); *Shah v. Hilton Worldwide Holdings, Inc.*, No. 25-cv-01018-EKL, 2026 WL 45093 (N.D. Cal. Jan. 7, 2026) (claims related to "Honors Terms" because they included "Privacy Statement" and "data collection terms" and the case concerned the "electronic collection" of plaintiffs' information); *Losson v. Union*

*des Associations Europeennes de Football*, No. 23-CV-06500-JSC, 2024 WL 3406987, at *2 (N.D. Cal. July 11, 2024) (terms expressly "govern[ed] his access to and use of the websites" and thus covered website-based privacy claims).

Here, Edward Jones Account Agreements contain no language similar to what was used in *Beltran*. Edward Jones customers were not required to accept the Account Terms to use the online portal like in *Cole*. And the terms do not relate to website usage and the collection of electronic information like in *Shah* and *Losson*.

**B. No Provisions Are Incorporated by Reference into the Online Access Terms**

As described in Section II.C, the Online Access Terms do not themselves contain an arbitration provision or venue clause. Rather, there is only one passing reference to the arbitration provision terms stating that Edward Jones customers "agree that the arbitration agreement contained within the [separate] Account Agreement applies to any controversies or disputes arising out of or relating to your use of Online Access . . ." *See* Section II.C.

Edward Jones does not provide customers, including Plaintiffs, with access to the "Account Agreement" at the time they were presented with the Online Access Terms. *See* Section II.D. Thus, Plaintiffs would need to locate—if they were ever provided with copies in the first place—the original Account Agreements from two to seven years ago to even begin to understand what the reference to the "arbitration agreement" is. *See id*. Nor could Plaintiffs access this information online, as Edward Jones only provides online copies of agreements signed within the last 12 months. *Id.* As described in Section II.B, Plaintiffs each signed Account Agreements in 2018, well before they signed up for Online Access in 2020 or even 2025.

Accordingly, the "arbitration agreement" contained in the Account Agreements is not properly incorporated by reference because these terms were not provided at the time Plaintiffs allegedly agreed to the Online Access Terms and only briefly referenced in passing. *See Rootstrap, Inc. v. Rubenstein*, No. CV 22-730 DMG (RAOx), 2022 WL 17254352, at *3 (C.D. Cal. Sept. 12, 2022) (finding that the defendant failed to incorporate the Master Services Agreement, including its arbitration provision, by making "only passing reference" to it in the Guaranty); *Perez v. DirecTV*

*Grp. Holdings, LLC*, 251 F. Supp. 3d 1328, 1339 (C.D. Cal. 2017), *aff'd sub nom*, *Perez v. DirecTV, LLC*, 740 F. App'x 560 (9th Cir. 2018) (arbitration agreement was not incorporated by reference into the agreement plaintiff signed where it "was not provided" to plaintiff "at the time she signed" the agreement and it was not "easily available" to her either as a hard copy or through the internet); *see also Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 1002 (9th Cir. 2018) ("[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document.").

Edward Jones cites only one case to support its claim that the "arbitration provision" is validly incorporated in the Online Access Terms. *See* Mot. at 9 (citing *New Image Painting, Inc. v. Home Depot U.S.A., Inc*., No. SACV 09-1224, 2009 WL 4730891, at *5 (C.D. Cal. Dec. 7, 2009)). But this case does not support its position. Rather, *New Image Painting* addresses whether an alleged oral agreement was a valid novation replacing an original written agreement. 2009 WL 4730891, at *4-5. There is no novation here or subsequent oral agreement. This case is entirely irrelevant.

**C. The Venue Provision Is Separate from the Arbitration Provision**

Even if the arbitration provision were incorporated by reference, it would not support transferring this case to Missouri. This is because the venue provision on which Edward Jones relies is separate from this arbitration provision and, by its terms, applies only to claims that are "not arbitrable." *See* Section II.C. Because the venue provision is not referenced anywhere in the Online Access Terms, unlike the arbitration provision, it has no application here. *See In re Orange, S.A*., 818 F.3d 956, 964 (9th Cir. 2016) ("Arbitration clauses are, however, distinct from the simple forum selection clause at issue here as arbitration clauses are construed liberally in favor [of] arbitration."); *Richardson v. MYW Holdings, LLC*, No. 3:15-CV-00365-RCJ-WGC, 2015 WL 7185460, at *3 (D. Nev. Nov. 13, 2015) (recognizing a forum selection clause is different from an arbitration clause because the former "designates a specific court jurisdiction in which disputes must be litigated" whereas the latter "removes disputes from the jurisdiction of any court").

**D. Edward Jones Cannot Show Plaintiff Frasher Agreed to Any Online Access Terms**

As described in Section II.C, Plaintiff Frasher signed up for Online Access before Edward Jones began using the June 2020 Online Access Terms. Edward Jones has presented no evidence

depicting what Plaintiff Frasher was presented with at the time he allegedly agreed to the June 2020 Online Access Terms on September 17, 2020. The screenshots in the Ham Declaration are undated, and Mr. Ham nowhere states when they were captured, where they came from, or that they depict the screens Plaintiff Frasher actually encountered in September 2020. *See* Section II.C.

Accordingly, Edward Jones has failed to meet its burden to transfer Plaintiff Frasher's claims to the Eastern District of Missouri. *See Crano v. Sojern, Inc.,* No. 3:25-CV-02600-JSC, 2025 WL 2689267, at *5 (N.D. Cal. Sept. 19, 2025) (denying motion to transfer where the defendant "has not provided sufficient evidence" reflecting what terms plaintiff "would have seen" because "'even minor differences' in the design elements may make the difference in this fact-intensive analysis"); *Dawson v. Target Corp.*, No. 3:24-CV-08167-AMO, 2025 WL 1651940, at *3 (N.D. Cal. June 11, 2025) (finding no assent to the terms where the defendants "have not provided any admissible evidence demonstrating the actual screens [plaintiff] would have seen at account creation, sign-in, or check-out"); *White v. PayPal Holdings Inc.*, No. 25-CV-04884-PCP, 2026 WL 496712, at *4 (N.D. Cal. Feb. 23, 2026) (finding no assent to online terms where the "screenshot does not show any language notifying users about terms of service" or "show what users would have seen after selecting . . . to join"). This is a separate ground to deny Edward Jones's Motion.

### E. Plaintiff Shah Cannot Be Bound by Forum Selection Clauses in Agreements He Never Signed

Edward Jones attempts to improperly sweep Plaintiff Shah's claims in its Motion, but Plaintiff Shah's theory of liability demonstrates exactly why the forum-selection clause in the Account Agreement does not apply to this case. Mot. at 12-15. Plaintiff Shah is not an Edward Jones client. Webber Decl. ¶ 5 (admitting it "has no records indicating Vishal Shah was a client of Edward Jones"). He never agreed to any Account Agreement, nor enrolled in Online Access. *Id*. His claims arise from Edward Jones's interception of his answers to a financial-advisor matching quiz on Edward Jones's *public website*—not from any account held with Edward Jones. ¶¶ 41-48. The fact that Plaintiff Shah's claims are consolidated with other Plaintiffs' claims here (ECF No. 46) means that this case has nothing to do with any services Edward Jones provided pursuant to the Account Agreements, but rather concerns the privacy violations that took place on the Edward Jones Properties. *See* Section

IV.A. Therefore, Plaintiffs Stevens and Frasher's claims should stay in this District with Plaintiff Shah's claims, not the other way around, as Edward Jones suggests. *See Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1102 (9th Cir. 2023) (finding plaintiff's claims "not dependent on the terms of the contract" because "if other individuals who were not Flex drivers were permitted to join" the Facebook group that resulted in the privacy violations, "those persons could likely assert the same claims against Amazon").

The cases Edward Jones cites are not to the contrary, as they only held that claims by non-signatories of forum selection clauses can be transferred along with those by signatories if those claims are appropriately within the scope of such agreements. *See* Mot. at 12-13 (citing *Cung Le v. Zuffa, LLC*, 108 F. Supp. 3d 768, 775 n.4, 776 (N.D. Cal. 2015) (transferring claims by "non-signatory plaintiffs" because "the clause makes clear that it applies to actions to interpret or enforce the contracts" and their antitrust claims require interpretation of the "exclusive dealing contracts" at issue); *Bromlow,* 438 F. Supp. 3d at 1029 (transferring non-signatory plaintiffs' claims where plaintiffs' "wage and hour claims" require analysis of whether they constitute "independent contractors or employees" under the independent contractor agreement); *Manetti-Farrow, Inc.*, 858 F.2d at 514 ("[C]onduct of the non-parties is so closely related to the contractual relationship" underlying plaintiffs' "tortious interference with contractual relations" claims.); *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007) ("[A]ny transactions between" non-signatory defendants and the plaintiff "took place as part of the larger contractual relationship between" plaintiff and signatory defendant which was governed by the forum selection clause.)). As explained above, and in Section IV.A, Plaintiffs' claims do not fall within the scope of the Account Agreements, and therefore these cases are squarely inapposite.

Nor does *In re Rolls Royce Corp*. support Edward Jones's argument, where the court only "sever[ed] and transfer[ed]" plaintiffs' claims against the signatory defendants, and kept claims against non-signatories in the present forum, based on a valid forum selection clause. 775 F.3d 671, 683-85 (5th Cir. 2014). Unlike this out-of-circuit decision, there is no valid forum selection clause or venue provision applicable to the remaining Plaintiffs' claims, such that there are no grounds to

transfer their claims or Plaintiff Shah's. Edward Jones's final citation to *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) is also inapposite, as it does not address non-signatories to forum selection clauses at all. *See* Mot. at 13.

Further, Edward Jones claims generally that it might suffer non-descript "prejudice" if it could not "resolve this controversy in the Eastern District of Missouri" (Mot. at 14), but it fails to actually identify any such prejudice. *Id*. The two cases it cites are therefore distinguishable. *See Hall v. Hall*, 584 U.S. 59, 72 (2018) (finding consolidation should not "[f]orc[e] an aggrieved party to wait for other cases to conclude"); *J. G. Link & Co. v. Cont'l Cas. Co.*, 470 F.2d 1133, 1138 (9th Cir. 1972) (consolidation should not affect "the substantive rights" under the insurance policies at issue).[6]

**F. Other Factors Weigh Against Transfer**

Setting aside the forum selection clause issues, the traditional transfer factors weigh against moving this case to Missouri. Plaintiffs chose to file this action in the Northern District of California, and that choice is entitled to "great weight." *See Trujillo v. GT USA, Inc.*, No. C-09-5179, 2010 WL 809505, at *1 (N.D. Cal. Mar. 5, 2010) ("[G]reat weight is generally accorded a plaintiff's choice of forum."); *see also Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1112 (9th Cir. 2020) (a plaintiff's choice of forum "is entitled to considerable deference").

Moreover, this is not a case where Plaintiffs selected a forum with no connection to the dispute. Plaintiffs are California residents who allege that their online communications were intercepted while they browsed the Edward Jones website and Online Access portal from California. *See* ¶¶ 25, 29, 33, 37, 41, 44. Edward Jones's own Exhibits show that it sent correspondence to Plaintiffs Stevens and Frasher [redacted]. *See* Webber Decl., Exs. 1-3.

Moreover, almost all of the third-party tracking technology companies whose software allegedly captured and disclosed Plaintiffs' data—the conduct at the heart of this case—are headquartered in or maintain significant operations in this District. *See* Section II.A. These third parties are likely to possess critical evidence, including records of the data they received, and may be

---

[6] Edward Jones's passing comment that Plaintiff Shah does not reside within this District is beside the point (Mot. at 12), as the Court has already consolidated his claims with those of Plaintiff Frasher who does reside in this District.

called as witnesses at trial. Their presence in this forum weighs in favor of litigating here, where they are subject to this Court's subpoena power. *See Aspen Ins. UK Ltd. v. Brown & Brown, Inc.*, No. CV10-07892-MMM (JCGx), 2011 WL 13217776, at *9 (C.D. Cal. May 2, 2011) (finding "the fact that numerous non-party witnesses are located in California . . . weighs in favor of denying transfer"). By contrast, Edward Jones has not identified any witnesses or evidence located in Missouri that could not be equally accessed from California. Edward Jones is a nationwide financial services firm that conducts business in every state and maintains its records electronically. Its declarants do not claim that relevant documents or witnesses are concentrated in Missouri rather than anywhere else. In an era where virtually all corporate records are stored digitally and witnesses routinely appear remotely, the Eastern District of Missouri offers no meaningful convenience advantage over this District. Indeed, any inconvenience Edward Jones faces litigating in California is one it assumed by choosing to do business with California residents, operate a website accessible to California users, and embed tracking technology that allegedly intercepted the communications of people in this state.

While Edward Jones claims at a high level of generality that public interest factors weigh in its favor, and that other federal courts would have no issue applying California law, actual practice shows otherwise. An example is instructive. In *In re Zeta Global Data Privacy Litigation*, No. 1:25-CV-05780 (S.D.N.Y.) ("*Zeta*"), an action pending in the Southern District of New York, the defendants in that case argued that no plaintiffs, including California residents, could bring California claims. *Zeta*, ECF No. 44 at 20-21. The defendants argued that under New York's choice of law rules the location of the injury for CIPA and privacy claims—like those alleged here—is New York where the defendants are headquartered. *See id.* (citing *Joiner v. NHL Enterprises, Inc.*, No. 23-CV-2083 (LAK) (BCM), 2025 WL 2846431, at *11-12 (S.D.N.Y. Aug. 29, 2025) (dismissing privacy and wiretapping claims under other states' law after finding New York law applies to claims brought by non-residents who used the websites from their location outside the forum)). Thus, the idea that all federal courts would readily apply California law is a gross overstatement and it is possible Missouri courts may decline, or misapply, California law, including protections mandated by the California legislature or enshrined in the California Constitution.

Notably, a majority of Plaintiffs' claims here are brought only on behalf of a California subclass, including CIPA §§ 631 and 632, CIPA §§ 638.50 and 638.51, violations of California's Unfair Competition Law, violations of the Comprehensive Computer Data Access and Fraud Act, and invasion of privacy pursuant to the California Constitution. And Edward Jones briefly suggests that "Missouri law" may "appl[y] in whole or in part." Mot. at 11. That Edward Jones intends to make this argument creates a real risk that Plaintiffs and California Class Members will be deprived of their right to bring California claims. In light of this, California has a strong interest in ensuring California residents are able to bring claims under the laws designed to protect them, and California courts are best suited to apply these laws to the claims at hand.

Accordingly, both these public interest factors and the other factors described herein weigh in favor of keeping this case in California.

**G. Edward Jones Has Waived the Right to Compel Arbitration**

Finally, having brought two rounds of motions to dismiss and motions to transfer (ECF Nos. 28-29, 49-50), Edward Jones has elected not to pursue arbitration pursuant to its terms and to proceed in federal court. Accordingly, Edward Jones has waived any right to arbitrate the claims alleged in this case. *See Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 473-74 (9th Cir. 2023) (finding defendant waived right to arbitrate where it "sought to take advantage of litigation in federal court" "all without even attempting to reserve its arbitration right"); *Plows v. Rockwell Collins, Inc.*, 812 F. Supp. 2d 1063, 1067 (C.D. Cal. 2011) (finding that seeking "a transfer of venue" constitutes an "active availment of the court system [that] is inconsistent with a demand for arbitration").

## V. CONCLUSION

For the foregoing reasons, Edward Jones's Motion to Transfer should be denied in its entirety.

Dated: July 20, 2026 By: */s/ Amanda Fiorilla*

Christian Levis (admitted *pro hac vice*)
Amanda Fiorilla (admitted *pro hac vice*)
Rachel Kesten (admitted *pro hac vice*)
Yuanchen Lu (admitted *pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100

White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com
ylu@lowey.com

Amber L. Schubert S.B.N. 278696
Willem F. Jonckheer S.B.N. 178748
Robert C. Schubert S.B.N. 62684
Sonum Dixit S.B.N. 353395
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union Street, Suite 200
San Francisco, CA 94123
Tel.: (415) 788-4220
Fax: (415) 788-0161
rschubert@sjk.law
wjonckheer@sjk.law
aschubert@sjk.law

Alec M. Leslie (admitted *pro hac vice*)
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel.: (646) 837-7126
aleslie@bursor.com

Joshua R. Wilner S.B.N. 353949
**BURSOR & FISHER, P.A.**
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Tel.: (925) 300-4455
jwilner@bursor.com

*Attorneys for Plaintiffs*