Michael J. Stortz (SBN 139386)
Michael.Stortz@klgates.com
Tae H. Kim (SBN 331362)
Tae.Kim@klgates.com
K. Taylor Yamahata (SBN 347192)
Taylor.Yamahata@klgates.com
K&L GATES LLP
Four Embarcadero Center, Suite 1200
San Francisco, California 94111
Telephone: (415) 882-8200
Facsimile: (415) 882-8220

*Attorneys for Defendants*
EDWARD D. JONES & CO., L.P. and THE JONES FINANCIAL COMPANIES, L.L.L.P.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE EDWARD D. JONES & CO. DATA PRIVACY LITIGATION | Case No. 3:26-cv-01178-JD<br><br>*Assigned for all purposes to Hon. James Donato*<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER**<br><br>Date: August 13, 2026<br>Time: 11:00 a.m.<br>Location: Courtroom 11 – 19th Floor<br>Judge: Hon. James Donato<br><br>Complaint Filed: February 6, 2026<br>Am. Compl. Filed: February 20, 2026<br>Cons. Compl. Filed: June 19, 2026 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... iii
I. INTRODUCTION ..... 1
II. ARGUMENT ..... 1
A. Client Plaintiffs' Agreements Include Mandatory Forum Selection Clauses. ..... 1
B. Client Plaintiffs' Claims Fall Within the Broad Forum Selection Clauses. ..... 3
C. Plaintiffs' Arguments Against Enforcement Are Unsupported by Law. ..... 6
D. No Public Interest Factors Overwhelmingly Disfavor Transfer. ..... 8
E. Consolidation Cannot Defeat Client Plaintiffs' Contractual Rights. ..... 9
F. Defendants Have Not Waived Arbitration. ..... 10
III. CONCLUSION ..... 10

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Atl. Marine Constr. v. U.S. Dist. Court*,
571 U.S. 49 (2013) ........ 1, 8, 9

*Bromlow v. D & M Carriers, LLC*,
438 F. Supp. 3d 1021 (N.D. Cal. 2020) ........ 3, 9

*Clark-Alonso v. Sw. Airlines Co*,
440 F. Supp. 3d 1089 (N.D. Cal. 2020) ........ 4

*Cole v. Quest Diagnostics, Inc.*,
No. 122CV00892JLTSKO, 2023 WL 6201702 (E.D. Cal. Sept. 22, 2023) ........ 6

*Damiano v. Grants Pass Sch. Dist.*
No. 7, 140 F.4th 1117 (9th Cir. 2025) ........ 3

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012) ........ 1

*Fedoroff v. Rocket Mortg.*,
No. 26-CV-00702-JSC, 2026 WL 1707021 (N.D. Cal. June 12, 2026) ........ 2

*GeorgiaPacific v. OffixeMax, Inc.*,
2013 WL 5273007 (N.D. Cal. Sept. 18, 2013) ........ 7

*Hall v. Hall*,
584 U.S. 59 (2018) ........ 1, 9

*In re Howmedica Osteonics Corp.*,
867 F.3d 390 (3d Cir. 2017) ........ 10

*J.G. v. Rustic Pathways LLC*,
No. 22-cv-05666-EJD, 2024 WL 1975472 (N.D. Cal. May 2, 2024) ........ 5

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) ........ 4, 9

*Johnson v. Walmart Inc.*,
57 F.4th 677 (9th Cir. 2023) ........ 4

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ........ 7

*Koresko v. RealNetworks, Inc.*,
291 F. Supp. 2d 1157 (E.D. Cal. 2003) ........ 6

*Lee v. Fisher*,
70 F.4th1129 (9th Cir. 2023) ........ 7

*Mey v. DIRECTV, LLC*,
971 F.3d 284 (4th Cir. 2020) ........ 3

*Mohamed v. Uber Techn., Inc.*,
848 F.3d 1201 (9th Cir. 2016) ........ 6

*New Image Painting, Inc. v. Home Depot U.S.A., Inc.*,
No. SACV 09-1224 AG RNBX, 2009 WL 4730891 (C.D. Cal. Dec. 7, 2009) ........ 7

*Perez v. DirecTV Grp. Holdings, LLC*,
251 F. Supp.3d 1328 (C.D. Cal. 2017) ........ 7

*Pirozzi v. Fiserv Corp.*,
668 F. Supp. 3d 968 (C.D. Cal. 2022) ........ 5

*Ponomarenko v. Shapiro*,
287 F. Supp. 3d 816 (N.D. Cal. 2018) ........ 7

*Provitas, LLC v. Quality Ingredients Corp.*,
No. 4:21-CV-00196, 2021 WL 5907790 (E.D. Tex. Dec. 14, 2021) ........ 7

*Rootstrap, Inc. v. Rubenstein*,
No. CV 22-730 DMG, 2022 WL 17254352 (C.D. Cal. Sept. 12, 2022) ........ 7

*Shah v. Hilton Worldwide Holdings Inc.*,
No. 25-CV-01018-EKL, 2026 WL 45093 (N.D. Cal. Jan. 7, 2026) ........ 5

*Shaw v. Regents of Univ. of Cal.*,
58 Cal.App.4th 44 (1997) ........ 8

*Simonoff v. Expedia, Inc.*,
643 F.3d 1202 (9th Cir. 2011) ........ 6

*Singh v. Adobe Inc.*,
797 F. Supp. 3d 1038 (N.D. Cal. 2025) ........ 2

*Smith v. Midwest Tape, LLC*,
No. 24-CV-08805-JD, 2026 WL 482856 (N.D. Cal. Feb. 20, 2026) ........ 6, 8, 10

*Stewart Organization, Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988) ........ 9

*Tao v. Murphy*,
812 F. Supp. 3d 1117 (D. Nev. 2025) ........ 4

*Travelers Prop. Cas. Co. of Am. v. Expeditors Int'l of Washington, Inc.*,
626 F. Supp. 3d 1193 (W.D. Wash. 2022) ........ 8

*United States v. Wilson*,
8 F.4th 970 (9th Cir. 2021) ........ 2

*Whelan Sec. Co. v. Allen*,
26 S.W.3d 592 (Mo. 2000) ........ 7

*White v. PayPal Holdings Inc.*,
821 F. Supp. 3d 1058 (N.D. Cal. 2026) ........ 2

*Yancey v. CCFI Cos., LLC*,
No. 2:124-CV-02187-DAD-JDP, 2025 WL 2719361 (E.D. Cal. Sept. 24, 2025) ........ 2

*Yei A. Sun v. Advanced China Healthcare, Inc.*
901 F.3d 1081 (9th Cir. 2018) ........ 3, 4

**Other Authorities**

Fed. R. Evid. 106 ........ 2

# I. <u>INTRODUCTION</u>

After multiple rounds of briefing, the unexplained departure of three plaintiffs, and the consolidation of two lawsuits, the core facts requiring transfer are uncontroverted. Plaintiffs Stevens and Frasher ("Client Plaintiffs") signed account agreements with forum selection clauses, and agreed to Online Access Terms that adopted those clauses. Their opposition presents no evidence to the contrary, nor any basis to overcome the strong federal policy in favor of enforcement of the forum selection clauses to which these Client Plaintiffs agreed.

As for Plaintiff Shah, the consolidation of his claims with those of Client Plaintiffs cannot, as a matter of law, alter the outcome. Such a result would be contrary to two unanimous United States Supreme Court decisions, *Atl. Marine Constr. v. U.S. Dist. Court*, 571 U.S. 49 (2013) and *Hall v. Hall*, 584 U.S. 59 (2018). Plaintiffs Stevens, Frasher, and Shah (collectively, "Plaintiffs") have not identified a single decision that would allow a plaintiff's unilateral decision to join forces with a plaintiff who agreed to a forum selection clause to trump a defendant's right to enforce that agreement. Defendants' Edward D. Jones & Co., L.P. and The Jones Financial Companies, L.L.L.P. (collectively, "Defendants") Motion to Transfer should be granted and this action transferred to the Eastern District of Missouri.

# II. <u>ARGUMENT</u>

## A. <u>Client Plaintiffs' Agreements Include Mandatory Forum Selection Clauses.</u>

The undisputed record establishes that the Client Plaintiffs agreed to mandatory forum-selection clauses by signing their account agreements. Webber Decl. ¶¶ 6–14 & Exhs. 1–3. "[I]t is not reasonable to fail to read a contract before signing it." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1163 (9th Cir. 2012)(citations omitted). Here, the undisputed evidence shows each Client Plaintiff acknowledged, directly above their signatures, that "**THE [ACCOUNT] AGREEMENT CONTAINS ON PAGE 6 IN SECTION 17, A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.**" Webber Decl. ¶¶ 9–14 & Exh. 2 at 1; Exh. 3 at 1 (emphasis in original). By their signatures, Client Plaintiffs further confirmed that he or she had "received, read and understand the [Account Agreement] and agree to its terms[.]" *Id.* ¶¶ 6–14 & Exh. 1 at 1; Exh. 2 at 1; Exh. 3 at 1.

Plaintiffs offer no evidence to the contrary. They do not dispute their signatures, their receipt and review of the account agreements, or their signed acknowledgement of the relevant provisions of the agreements. Nor do they dispute their agreement to the Online Access Terms. Plaintiffs do not deny that Plaintiff Stevens accepted the operative Online Access Terms. *See* Opp'n at 10-11; *see* Ham Decl. ¶ 27 & Exh. B (enrollment confirmation). Nor does Plaintiff Frasher deny his acceptance of the updated Online Access Terms. Ham Decl. ¶¶ 15–19, 29–30.

The lack of any such evidence, after two rounds of briefing, is fatal to any assertion that Plaintiffs are not bound by the account agreements, including the forum selection clauses therein, or the Online Access Terms. *See Yancey v. CCFI Cos., LLC*, No. 2:124-CV-02187-DAD-JDP, 2025 WL 2719361, at *5 (E.D. Cal. Sept. 24, 2025) (lack of declarations or other evidence from plaintiffs leaves no issue of contested fact); *Fedoroff v. Rocket Mortg.,* No. 26-CV-00702-JSC, 2026 WL 1707021, at *4 (N.D. Cal. June 12, 2026) (plaintiff bound by forum selection clause "given Plaintiff does not offer evidence that rebuts Defendant's evidence"); *White v. PayPal Holdings Inc.*, 821 F. Supp. 3d 1058, 1068 (N.D. Cal. 2026) ("plaintiffs' failure to provide competent evidence directly rebutting defendants' evidence fails to create a genuine issue as to the sign-up process that was presented to those plaintiffs when they created their accounts."); *Singh v. Adobe Inc.*, 797 F. Supp. 3d 1038, 1046 (N.D. Cal. 2025) (defendant satisfied burden where "[plaintiffs] neither dispute that the screenshots offered by [defendant] are the same as what they saw nor offer any evidence regarding what they saw").

Instead, Plaintiffs rely exclusively on their counsel's declaration, which is not evidence. *See United States v. Wilson*, 8 F.4th 970, 973, n. 3 (9th Cir. 2021). Counsel's declaration also is incomplete (Fed. R. Evid. 106) and does not otherwise reflect what Client Plaintiffs reviewed at the time of enrollment. *See Singh,* 797 F. Supp. 3d at 1046. As shown below, the pertinent Online Access screen states that "You can always obtain a copy of any document, including historical or those for closed accounts, by contacting your local office." There is no evidence the account agreements were not available to Client Plaintiffs at any point.




### B. <u>Client Plaintiffs' Claims Fall Within the Broad Forum Selection Clauses.</u>

Plaintiffs' strained interpretation of the "Arbitration Agreement" section of the Client Plaintiffs' account agreements lacks support in the law and facts. These provisions unambiguously provide that "[a]ny controversy arising out of or relating to" the Client Plaintiffs' "account[s] from its inception, business, transaction or relationships" with Defendants[1] "shall" be litigated exclusively in the Circuit Court of St. Louis County or the Eastern District of Missouri. Webber Decl. ¶¶ 6–14 & Exh. 1 at 8; Exh. 2 at 9; Exh. 3 at 9.

Under federal law governing contract interpretation, forum selection clauses that encompass disputes "relating to" a particular issue include any dispute, in tort or in contract, that has some "logical or causal connection" to the issue. *See Yei A. Sun v. Advanced China Healthcare, Inc*. 901 F.3d 1081, 1086 (9th Cir. 2018); *Bromlow v. D & M Carriers, LLC*, 438 F. Supp. 3d 1021, 1027 (N.D. Cal. 2020). It follows that the forum selection clauses apply to any controversy that has some logical or causal connection to Client Plaintiffs' accounts, or their business, transactions, or relationships with Defendants. "The word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind[.]'" *Mey v. DIRECTV, LLC*, 971 F.3d 284, 293 (4th Cir. 2020) (citing *U.S. v. Gonzales*, 520 U.S. 1, 5 (1997) (quoting

[1] Plaintiffs do not address, and therefore concede, that Defendants are affiliates or otherwise closely related to the Edward Jones Trust Company, which in some instances is the counterparty to Plaintiffs' account agreements. *See* Motion at 9-10; *see Damiano v. Grants Pass Sch. Dist. No. 7*, 140 F.4th 1117, 1152 (9th Cir. 2025) ("a party's failure to address a claim or issue in briefing is best described as a 'forfeiture.'").

Webster's Third New International Dictionary 97 (1976))).

Despite this broad language, Plaintiffs argue the forum selection clauses must be strictly limited to "disputes arising from Plaintiffs' actual financial accounts and use of financial advisors[.]" Opp'n at 6. Whatever "actual financial accounts" means, that argument flies in the face of the broad language of the forum selection clauses. Moreover, the Client Plaintiffs' claims manifestly arise out of Client Plaintiffs' accounts, their client relationship with Defendants, and the alleged unauthorized access to their account information. CCAC [Dkt. 47] ¶¶ 71-72.

Plaintiffs' reliance on *Clark-Alonso v. Sw. Airlines Co.* only proves the point. There, the forum selection clause was limited to "[a]ny and all matters arising out of or relating to the [agreement]." 440 F. Supp. 3d 1089, 1092, 1094 (N.D. Cal. 2020). The remainder of Plaintiffs' authorities are inapplicable as they are based on cases applying California law of contractual interpretation, and/or the Federal Arbitration Act,[2] rather than federal contract law which controls here. *See Sun*, 901 F.3d at 1086.

And despite Plaintiffs' assertions otherwise, the Consolidated Class Action Complaint ("CCAC") places the Client Plaintiffs' accounts and relationships with Defendants at the center of their claims. The word "account" appears, specifically with reference to Plaintiffs' accounts with Edward Jones, over thirty times. CCAC (Dkt. 47) ¶¶ 2, 3, 8, 11, 28, 36, 49, 68, 70, 71, 88, 116, 117, 119, 137, 139, 143-146, 161. Among other things, Client Plaintiffs allege that they maintained Edward Jones accounts, paid Edward Jones for services, and used Online Access to "to initiate a financial ***relationship***," "view account statements, portfolio holdings, and transaction history." *Id.* ¶¶ 3 (emphasis added), 25–28, 33–38, 49, 69, 300. They allege that Edward Jones violated duties and expectations of confidentiality arising from their status as account owners and was unjustly enriched through fees and other benefits paid for financial services. *See id.* ¶¶ 244–49, 297–300, 308. Plaintiffs' ability to use Online Access to review their account balances and account transactions (*id.* ¶¶ 2, 28, 36) depends entirely on the existence of their Edward Jones accounts. *See* Ham Decl. ¶ 4. Without those accounts, and the

[2] *See Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1101-1102 (9th Cir. 2023)(applying California and FAA to interpret arbitration provision); *Johnson v. Walmart Inc.*, 57 F.4th 677, 681-82 (9th Cir. 2023)(same); *Tao v. Murphy*, 812 F. Supp. 3d 1117, 1120 (D. Nev. 2025)(applying FAA).

agreements that created same, Client Plaintiffs could not use Online Access.

If there were any remaining questions as to scope, those are resoundingly answered by the Online Access Terms. *See* Ham Decl. ¶ 13, Exh. A. The Online Access Terms state that they are "in addition to, and do not change or modify, any other agreement" between the user and Defendants, including the Account Agreement. *Id*., Exh. A at 1. They provide that the Client Plaintiffs "agree that the arbitration agreement contained within the[ir] Account Agreement applies to any controversies or disputes arising out of relating to [their] use of Online Access, or to these Terms, or any breach thereof." *Id*., Exh. A at 3, §16 ["Arbitration"]. Further, they expressly address the disclosure of information provided through Online Access for Edward Jones' business or to offer, provide, or maintain Online Access. *Id*., Exh. A at 3, §10 ["Sharing of Information"]. Indeed, the very argument Plaintiffs raise—that the Online Access Terms are not subject to the forum selection clauses of their earlier account agreements—is an example of a controversy connected to Plaintiffs' business, transactions or relationships with Defendants, and thus subject to the forum selection clauses in those agreements. That scope encompasses Plaintiffs' claims regarding their use of Online Access portal, the access to which was granted solely due to their customer relationships with Edward Jones. *See* Ham Decl. ¶ 4.

Plaintiffs attempt to avoid this outcome by arguing that the claims relate to their use of "Edward Jones Properties," which is defined to include the Online Access portal. Opp'n at 7; CCAC at 1. But even with a change in labels, the Online Access portal could not be accessed, nor Plaintiffs' account information located on the portal, unless the Client Plaintiffs had accounts with Edward Jones in the first place. Their claims plainly relate to the agreements by which Plaintiffs opened their accounts. *See, e.g., Pirozzi v. Fiserv Corp*., 668 F. Supp. 3d 968, 974 (C.D. Cal. 2022) (enforcing forum selection clause where tort claims related to agreement); *J.G. v. Rustic Pathways LLC*, No. 22-cv-05666-EJD, 2024 WL 1975472, at *5 (N.D. Cal. May 2, 2024) (same). And there can be no question as to the nexus between Plaintiffs' claims and the Online Access Terms, which further reinforces that those claims are subject to the forum selection clauses. *See Shah v. Hilton Worldwide Holdings Inc*., No. 25-CV-01018-EKL, 2026 WL 45093, at *4 (N.D. Cal. Jan. 7, 2026)("Because this case involves the electronic collection of Plaintiffs'

personal information, there is a plain nexus between the dispute, this notice, and the agreements."); *Cole v. Quest Diagnostics, Inc*., No. 122CV00892JLTSKO, 2023 WL 6201702, at *4 (E.D. Cal. Sept. 22, 2023) (claims covered by forum selection clause "[b]ecause the Terms and Conditions disclose the data collection practices challenged and referenced by Plaintiffs").

Plaintiffs do not meaningfully engage with these transfer decisions. And they altogether ignore Judge Corley's recent decision in *Fedoroff*, transferring a similar action based on a forum-selection clause in the website's Terms of Use. They dismiss this Court's decision in *Smith v. Midwest Tape, LLC*, No. 24-CV-08805-JD, 2026 WL 482856 (N.D. Cal. Feb. 20, 2026) as not reaching scope issues. But *Smith* found that the forum selection clause there, which broadly covered "any claim relating to the Platform, software for or associated with the Platform," was more than enough to "encompas[s] disputes about arbitrability." *Id.* at *2. So too are the Client Plaintiffs' claims encompassed by the broad forum selection clauses to which they agreed.

**C. <u>Plaintiffs' Arguments Against Enforcement Are Unsupported by Law.</u>**

Plaintiffs argue that the Online Access Terms "do not themselves contain an arbitration provision or venue clause." Opp'n at 9. As established above, that is incorrect.[3] *See* Ham Decl. ¶ 13, Exh. A at 3, § 16 ("Arbitration"). Plaintiffs further object that the forum selection clauses are not expressly referenced in Section 16 (Opp'n at 10), but that objection is not well-taken. Section 16 refers to their "Account Agreement[,]" with the latter phrase defined to include "your Edward Jones account agreement(s)." *Id*., Exh. A at 1. In turn, the sections of Client Plaintiffs' account agreements that contain the forum selection clauses are titled "Arbitration Agreement" and the forum selection clauses are included within the first subsection (a). Webber Decl. ¶¶ 6–14 & Exh. 1 at 8; Exh. 2 at 9; Exh. 3 at 9. That is entirely appropriate, given that parties may specify the forum for resolving disputes that may not be arbitrable, as part of general provision addressing dispute resolution. *See, e.g., Smith,* 2026 WL 482856, at * 2; *see also Mohamed v. Uber Techn., Inc*., 848 F.3d 1201, 1209 (9th Cir. 2016) (rejecting alleged tension between forum

[3] The clause at issue is a mandatory forum selection clause given it identifies the specific courts in which applicable controversies must be brought and provides the parties' consent to those courts' exclusive jurisdiction. *See Koresko v. RealNetworks, Inc*., 291 F. Supp. 2d 1157, 1161 (E.D. Cal. 2003) ("A forum selection clause will be enforced where venue is specified with mandatory language."); *see also Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1207 (9th Cir. 2011).

selection clause included within arbitration provision). Plaintiffs assert that the heading "Arbitration Agreement" excludes the forum selection clauses, but that assertion fails under the basic tenet that "'a heading is but a short-hand reference to the general subject matter involved.'" *GeorgiaPacific v. OffixeMax, Inc.*, 2013 WL 5273007 * 9 (N.D. Cal. Sept. 18, 2013) (quoting *Bhd. of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 528-529 (1947)). Arbitration and forum selection clauses are often included within the same contractual provision (*see, e.g., Smith, Mohamed*), since "an agreement to arbitrate is, in effect, a specialized kind of forum selection clause." *Lee v. Fisher*, 70 F.4th1129, 1142 (9th Cir. 2023)(cleaned up)(citation omitted).

Plaintiffs' assertion that the Online Access Terms should not apply because they did not incorporate by reference the relevant provision of Plaintiffs' account agreements fails under the law and facts. *See* Opp'n at 9-10 (citing cases). As for the law, the forum selection analysis is governed by federal contract rules,[4] which holds that claims relating to subsequent contracts may be subject to forum selection clauses in prior agreements. *See New Image Painting, Inc. v. Home Depot U.S.A., Inc*., No. SACV 09-1224 AG RNBX, 2009 WL 4730891, at *4-5 (C.D. Cal. Dec. 7, 2009); *Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 838 (N.D. Cal. 2018); *Provitas, LLC v. Quality Ingredients Corp.*, No. 4:21-CV-00196, 2021 WL 5907790, at *16 (E.D. Tex. Dec. 14, 2021). Plaintiffs' authorities are inapt, consisting of cases that address California contract rules,[5] and federal pleading standards.[6] As for the facts, Section 16 of the Online Access Terms is clear, unequivocal and set forth in its own separately numbered section. That is hardly a "passing reference" as Plaintiffs assert. Opp'n at 9. Indeed, Section 16 appears immediately above the consent button on the Online Access enrollment process, with a bold heading, sufficient to call

[4] Notably, Plaintiffs' account agreements and the Online Access Terms include choice-of-law provisions that designate Missouri law as controlling as to matters of contract interpretation. Consistent with Missouri's strong policy in favor of enforcing forum selection clauses, Missouri courts enforce forum selection clauses contained in one agreement, even where the parties' dispute purportedly arises under a separate agreement. *See Whelan Sec. Co. v. Allen*, 26 S.W.3d 592 (Mo. 2000) (citing *High Life Sales v. Brown-Forman*, 823 S.W.2d 493 (1992)).

[5] *See Rootstrap, Inc. v. Rubenstein*, No. CV 22-730 DMG (RAOX), 2022 WL 17254352, at *3 (C.D. Cal. Sept. 12, 2022) (agreement required application of California law and arbitration provision directly contradicted arbitration provision in previous agreement) and *Perez v. DirecTV Grp. Holdings, LLC*, 251 F. Supp.3d 1328, 1339 (C.D. Cal. 2017).

[6] *See Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 1002 (9th Cir. 2018).

Plaintiffs' attention to same. *See* Ham Decl. ¶ 9. Moreover, the heading of the provision need not refer to the forum selection clause for the clause to be enforced. *See Smith*, 2026 WL 482856 at *2 (enforcing forum selection clause within "Governing Law and Jurisdiction" provision).

As for whether the account agreements were "known or easily available to" Plaintiffs, Plaintiffs themselves acknowledged their own review and receipt of the account agreements, immediately above their undisputed signatures—and present no competent evidence to the contrary. *See* Section II.A., *supra*. Thus, even assuming *arguendo* that California's requirements for "incorporation by reference" would somehow apply, those requirements are satisfied anyway. *See Shaw v. Regents of Univ. of Cal.,* 58 Cal.App.4th 44, 54 (1997).

And even if they were not, that would not alter the outcome. Whether Plaintiffs may have agreed to the account agreements before they used Online Access does not matter because the forum selection clauses apply to any business, transactions or relationships that Plaintiffs "may have in the future with [Defendants]." Webber Decl. ¶¶ 6–14 & Exhs. 1 at 8, Exh. 2 at 8, Exh. 3 at 8. That plainly encompasses Plaintiffs' subsequent enrollment in Online Access for the purpose of accessing their account information, and which was granted solely due to Plaintiffs' accounts with Edward Jones. Plaintiffs' challenge to the Online Access enrollment process should be resolved by the transferee Court, per the forum selection clauses to which they agreed.

**D. <u>No Public Interest Factors Overwhelmingly Disfavor Transfer.</u>**

Plaintiffs misapply the governing standard by reasserting private-interest factors that are irrelevant. Under *Atlantic Marine*, once a valid forum selection clause applies, a plaintiff's choice of forum "merits no weight," and the Court must disregard all private-interest factors—including convenience, access to proof, and forum preference. 571 U.S. at 51, 63-64 & n.6; *see also Smith*, 2026 WL 482856 at *2. Plaintiffs fail to offer any evidence or argument to meet their burden of showing that the public interest factors "overwhelmingly disfavor" transfer. *Atl. Marine Constr.*, 571 U.S. at 51. They rely on attorney speculation about potential witnesses and the location of evidence—much of which is unknown, and all of which is irrelevant. *Travelers Prop. Cas. Co. of Am. v. Expeditors Int'l of Washington, Inc.*, 626 F. Supp. 3d 1193, 1199 (W.D. Wash. 2022) (citing *Atlantic Marine*, 571 U.S. at 64). Their concerns about application of

California law in the transferee court are particularly misguided, for at least two reasons, as explained in *Atlantic Marine*: (1) transfer under a forum selection clause "will not carry with it the original venue's choice-of-law rules"; and (2) "federal judges routinely apply the law of a State other than the State in which they sit." 571 U.S. at 582, 584.

In short, Plaintiffs have not shown, as they must, that this is the exceptional case where the public interest overwhelmingly ***disfavors*** transfer. The slew of cases from this District transferring similar claims indeed show otherwise. *See* Mot. at 11-12. Transfer should occur before any further proceedings in this District, consistent with the federal court system's "strong interest in the correct resolution of [forum-selection clause] questions, not only to spare litigants unnecessary costs but also to relieve courts of time-consuming pretrial motions[.]" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29–31 (1988) (Kennedy, J., concurring).

**E. <u>Consolidation Cannot Defeat Client Plaintiffs' Contractual Rights.</u>**

Plaintiffs fail to cite any authority supporting their theory that Plaintiff Shah's voluntary consolidation of his claims with those of the Client Plaintiffs can effectively anchor the case in this District, notwithstanding the forum selection clauses to which the Client Plaintiffs agreed. Plaintiffs' anchoring theory cannot be reconciled with *Atlantic Marine*'s strong federal policy of enforcing forum selection clauses (571 U.S. at 62–64) or *Hall*'s rule that consolidation does not alter the parties' rights (584 U.S. at 70, 72). Allowing Plaintiff Shah's consolidation to prevent transfer of the Client Plaintiffs' claims would prejudice Defendants' rights to resolve the Client Plaintiffs' claims in the Eastern District of Missouri—rights to which Defendants "would have been due had consolidation never occurred." *Hall*, 584 U.S. at 72.

Defendants are not aware of any federal decision that supports Plaintiffs' anchoring theory. Plaintiffs principally invoke *Jackson*, but that decision does not even mention a forum-selection clause or consolidation. *See* 65 F.4th at 1101. Nor could that decision, or any other lower court decision, override *Atlantic Marine* and *Hall*. As for the Northern District authorities cited by Defendants, Plaintiffs aver that those decisions are limited to decisions regarding scope, but that is not an accurate reading. *See Bromlow*, 438 F. Supp. 3d at 1029 (non-signatory plaintiffs subject to transfer under the forum selection clause to which other plaintiffs agreed); *see*

*also Cung Le,* 1108 F. Supp. 3d 768, 775 n.4 (plaintiffs who joins action with signatory plaintiffs necessarily "subject their cases to the applicable forum selection clause[.]").

Plaintiffs also ignore the multi-part transfer analysis in *In re Howmedica Osteonics Corp*., 867 F.3d 390 (3d Cir. 2017), which Defendants addressed in the moving papers. Mot. at 14-15. Even assuming that framework applies, it requires that the Court first gives controlling weight to the Client Plaintiffs' forum-selection clauses. *Id*. at 403–04. Next, it considers the interests relevant to the non-contracting party. Here, those interests do not favor this District: Plaintiff Shah resides in Orange County, Defendants are headquartered in Missouri, and Plaintiff Shah identifies no personal connection to the Northern District. Indeed, it defies logic that Plaintiff Shah's claims, which have no connection with this District, could operate to anchor the Client Plaintiffs' claims in this District. Only transfer of this action to the Eastern District of Missouri comports with *Atlantic Marine* and *Hall*.

### F. <u>Defendants Have Not Waived Arbitration.</u>

Plaintiffs' remaining argument that Defendants have waived the right to compel their claims to arbitration is premature and otherwise erroneous. A forum selection clause may properly be enforced before addressing whether Plaintiffs' claims should be resolved in arbitration. *See Smith,* 2026 WL 482856 at *2. And Client Plaintiffs themselves agreed, in consenting to forum selection clauses providing that neither party shall "seek to enforce any pre-dispute arbitration agreement" against plaintiffs asserting class action claims until the class certification is denied, the class is decertified, or the customer is excluded from the class. Webber Decl. ¶¶ 6–14 & Exhs. 1 at 8, Exh. 2 at 8, Exh. 3 at 8. The clause further provides that "**[s]uch forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this Services Agreement except to the extent stated herein.**" *See id*. Consistent with that provision, Defendants have not yet moved to compel arbitration, and correctly so. Nor have Defendants acted inconsistently by pursuing discovery, or "exerting a significant amount of energy litigating in this District." *Smith*, 2026 WL 482856 at *2 (citations, quotations omitted).

## III. <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to transfer should be granted.

Dated: July 27, 2026

K&L Gates LLP

By: _/s/ K. Taylor Yamahata___
Michael J. Stortz
Tae H. Kim
K. Taylor Yamahata

*Attorneys for Defendants*
EDWARD D. JONES & CO., L.P. and THE JONES FINANCIAL COMPANIES, L.L.L.P