Michael J. Stortz (SBN 139386)
Michael.Stortz@klgates.com
Tae H. Kim (SBN 331362)
Tae.Kim@klgates.com
K. Taylor Yamahata (SBN 347192)
Taylor.Yamahata@klgates.com
K&L GATES LLP
Four Embarcadero Center, Suite 1200
San Francisco, California 94111
Telephone: (415) 882-8200
Facsimile: (415) 882-8220

*Attorneys for Defendants*

EDWARD D. JONES & CO., L.P. and THE JONES FINANCIAL COMPANIES, L.L.L.P.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE EDWARD D. JONES & CO. DATA PRIVACY LITIGATION | Case No. 3:26-cv-01178-JD<br><br>*Assigned for all purposes to Hon. James Donato*<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**<br><br>Date: August 13, 2026<br>Time: 11:00 a.m.<br>Location: Courtroom 11 – 19th Floor<br>Judge: Hon. James Donato<br><br>Compl. Filed: February 6, 2026<br>Am. Compl. Filed: February 20, 2026<br>Cons. Compl. Filed: June 19, 2026 |

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ........ iii

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 1

A. Plaintiff Shah Cannot Avoid the Preclusive Effect of His With-Prejudice Dismissal. ........ 1

B. Plaintiff Shah's Consent to the Website's Use of Cookies and Third-Party Software Defeats His Privacy Claims. ........ 1

C. Venue Remains Improper as to Plaintiffs Shah and Stevens. ........ 2

D. Plaintiffs Lack Article III Standing. ........ 3

E. Plaintiffs Fail to State a Claim under CIPA § 631 and the ECPA. ........ 4

F. Plaintiffs CIPA § 632 Claim Remains Deficient. ........ 6

G. Plaintiffs' CIPA §§ 638.50 and 638.51 Claim Remains Deficient. ........ 6

H. Plaintiffs Fail to State a Claim for Invasion of Privacy. ........ 7

I. Plaintiffs Lack Statutory Standing Under the UCL and CDAFA. ........ 8

J. Plaintiffs Fail to State a Viable Negligence Claim. ........ 9

K. Plaintiffs Fail to Allege Unjust Enrichment. ........ 10

III. CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Casillas v. Six Flags Ent. Corp.*,
812 F. Supp. 3d 1016 (C.D. Cal. 2025) ........ 5

*Concha v. London*,
62 F.3d 1493 (9th Cir. 1995)........ 1

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ........ 4, 8

*Esparza v. Gen. Digit. Inc.*,
2024 WL 655986 (C.D. Cal. Jan. 2024) ........ 4, 5

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)........ 5

*Gabrielli v. Motorola Mobility LLC*,
No. 24-cv-09533-JST, 2025 WL 1939957 (N.D. Cal. July 14, 2025)........ 7, 8

*Gerber v. Twitter, Inc.*,
No. 4:23-CV-00186-KAW, 2024 WL 1354449 (N.D. Cal. Mar. 29, 2024)........ 8

*In re Google Inc. Gmail Litig.*,
No. 13-md-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014)........ 5

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ........ 6

*Griffith v. TikTok, Inc.*,
2023 WL 9019035 (C.D. Cal. Dec. 13, 2023) ........ 4

*Hammerling v. Google, LLC*,
2022 WL 17365255 (N.D. Cal. Dec. 1, 2022)........ 4

*Heiting v. HP Inc.*,
No. 24STCV29634, 2025 WL 2993673 (Cal.Super. Aug. 01, 2025)........ 7

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-CV-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025) ........ 7

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002)........ 5

*Krottner v. Starbucks Corp.*,
406 F. App'x 129 (9th Cir. 2010) ........ 10

*Krzyzek v. OpenX Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026) ........ 8

*L.B. v. LinkedIn Corp.*,
No. 5:24-CV-06832-EJD, 2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ........ 6

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ........ 2

*Libman v. Apple, Inc.*,
2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) ........ 6

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) ........ 4

*Lineberry v. AddShopper, Inc.*,
No. 23-CV-01996-VC, 2025 WL 551864 (N.D. Cal. Feb. 19, 2025)........ 9

*Lorentzen v. Kroger Co.*,
532 F. Supp. 3d 901 (C.D. Cal. 2021) ........ 4

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 10

*Matthews v. Nat'l Football League Mgmt. Council*,
688 F.3d 1107 (9th Cir. 2012)........ 2

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 5

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ........ 9

*Mitchener v. CuriosityStream, Inc.*,
No. 25-CV-01471-NW, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025)........ 7

*Parks v. Armour Pharmaceuticals*,
1995 WL 13232 (N.D. Cal. Jan. 6, 1995) ........ 1

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 3

*Pruchnicki v. Envision Healthcare Corp.*,
845 F. App'x 613 (9th Cir. 2021) ........ 10

*Rodriguez v. Google LLC*,
No. 20-CV-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021)........ 6

*Sanchez Mora v. U.S. Customs & Border Prot.*,
No. 3:24-CV-02430-TLT, 2024 WL 5378335 (N.D. Cal. Nov. 4, 2024)........ 3

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 WL 487194 (Cal.Super. Jan. 27, 2025) .......... 7

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... 5, 8, 9

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) .......... 2, 7

*Singh v. Adobe Inc.*,
797 F. Supp. 3d 1038 (N.D. Cal. 2025) .......... 2

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) .......... 9

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) .......... 9

*Terpin v. AT And T Mobility LLC*,
118 F.4th 1102 (9th Cir. 2024) .......... 10

*In re: USA Today Co., Inc., Internet Tracking Litig.*,
No. 24-CV-05150-MMC, 2026 WL 932655 (N.D. Cal. Apr. 6, 2026) .......... 3

*Walsh v. Dollar Tree Stores, Inc.*,
No. 25-CV-01601-SVK, 2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) .......... 2, 3

*Wright v. Charles Schwab & Co.*,
No. 20-CV-05281-LB, 2020 WL 6822887 (N.D. Cal. Nov. 20, 2020) .......... 10

*Yockey v. Salesforce, Inc.*,
2024 WL 3875785 (N.D. Cal. Aug. 16, 2024) .......... 6

*Yoon v. Meta Platforms, Inc.*,
No. 24-CV-02612-NC, 2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) .......... 6

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 5

**Statutes**

Cal. Penal Code § 631 .......... 4

Cal. Penal Code § 632 .......... 6

Cal. Penal Code § 637.7 .......... 6

Cal. Penal Code §§ 638.50 .......... 6

Cal. Penal Code §§ 638.50(b), (c) .......... 7

Cal. Penal Code § 638.51 ........ 6, 7

Cal. Penal Code § 638.52 ........ 7

**Other Authorities**

Fed. R. Civ. P. 60(b) ........ 1

N.D. Cal. Civ. L.R. 3-2(c) ........ 3

## I. INTRODUCTION

Plaintiffs Theresa Stevens, Dennis Frasher, and Vishal Shah's ("Plaintiffs") opposition serves only to highlight the Consolidated Class Action Complaint's ("CCAC") fundamental pleading deficiencies, including the consent-based defect in Plaintiff Shah's privacy claims, improper venue, lack of Article III standing, and absence of viable claims for relief. The opposition rehashes the CCAC'S generalized allegations about Edward Jones's Website and Online Access and confirms that the CCAC lacks the allegations grounded in Plaintiffs' actual experience required to avoid dismissal. Plaintiffs' CCAC should be dismissed.

## II. ARGUMENT

### A. Plaintiff Shah Cannot Avoid the Preclusive Effect of His With-Prejudice Dismissal.

While Plaintiff Shah now blames his counsel for a "scrivener's error," Defendants first raised the with-prejudice dismissal of Plaintiff Shah's Central District action five months ago (Dkt. 23) – yet Plaintiffs have done nothing to address the putative error since. They have filed no Fed. R. Civ. P. 60(b) motion in the Central District, much less obtained any corrective order, notwithstanding their own cited authority, *Parks v. Armour Pharmaceuticals*, 1995 WL 13232, at *1 (N.D. Cal. Jan. 6, 1995), requires that procedural path. An unsworn argument before this Court that Plaintiff Shah did not intend to dismiss his claims with prejudice is simply not a cognizable basis for the Court to disregard the legal impact of such a dismissal. *See Concha v. London*, 62 F.3d 1493, 1507 (9th Cir. 1995)(by dismissing with prejudice, plaintiff submits to "judgment that bars his claims forever.").

### B. Plaintiff Shah's Consent to the Website's Use of Cookies and Third-Party Software Defeats His Privacy Claims.

Plaintiffs' consent argument rests on the premise that the Cookies Banner disclosed only the collection of information concerning "your use of the Sites," not sharing of private information. Opp. at 4. But Plaintiffs quietly relegate to a footnote any reference to Edward Jones' Online Privacy Policy, even though that Policy is hyperlinked and incorporated by reference within the Banner. And in fact, the Privacy Policy is directly relevant to, and dispositive of, Shah's claim.

The Online Privacy Policy expressly states that Edward Jones may "sell" or "share"

personal information, including browsing behavior, online activities, website interactions, and personal identifiers, to "advertising networks and other companies that facilitate digital advertising" for cross-context behavioral advertising. Kammann Declaration, Ex. A (Dkt. 50-1) at 7-8. It further discloses that Edward Jones allows "third parties (including Google and Meta)" to use third-party software to "collect or receive information about how you interact with our Sites," and that such software "may include technologies that record your interactions with the Sites . . . ." *Id.* at 18. This is not a "vague" disclosure of generic information, but a specific, detailed disclosure of the type of data collected, the identity of the third parties involved, and the purpose of targeted advertising. A such, *Silver v. Stripe Inc.*, 2021 WL 3191752, at *4–6 (N.D. Cal. July 28, 2021) and *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1056 (N.D. Cal. 2025), which Plaintiffs attempt to distinguish, only confirm that Edward Jones's disclosures are sufficient. Both cases found consent based on disclosures substantively identical to the disclosures provided by the Online Privacy Policy.

Also unavailing is Plaintiffs' suggestion that the Kammann Declaration fails because it does not confirm exactly how Plaintiff Shah responded to the Consent Banner. The Kammann Declaration establishes that the Consent Banner could not be bypassed and required affirmative action before Plaintiff Shah could access any portion of the Website. It follows that Plaintiff Shah necessarily accepted or managed cookies before proceeding.[1] Plaintiffs cannot preserve a claim premised on covert tracking by ignoring both the mandatory Banner and the linked Online Privacy Policy's detailed disclosures. The Court can and should dismiss Shah's claim at this stage.[2] *See Lakes*, 777 F. Supp. 3d at 1055-57; *Silver*, 2021 WL 3191752, at *2-4.

**C. Venue Remains Improper as to Plaintiffs Shah and Stevens.**

"It is well-established that in most instances, the rule in a proposed class action is that each

---

[1] Plaintiffs' Wilner Declaration (Dkt. 57-1) should not be considered by the Court. Unlike the Kamman Declaration, which authenticates publicly available website materials subject to Defendants' Request for Judicial Notice (Dkt. 51), the Wilner Declaration presents new factual assertions as to counsel's experience in July 2026. Counsel's declaration is not evidence, nor relevant to Plaintiff Shah's online interaction in October 2025. *See Singh v. Adobe Inc.*, 797 F. Supp. 3d 1038, 1045 (N.D. Cal. 2025) ("Wilner declaration" as to website at time of briefing irrelevant to plaintiffs' alleged online interaction months earlier).

[2] Defendants' Request for Judicial Notice, which is unopposed, should be granted. Courts may take judicial notice of the contents of publicly available websites, including privacy policies, where their accuracy cannot reasonably be disputed. *See Matthews v. Nat'l Football League Mgmt. Council*, 688 F.3d 1107, 1113 (9th Cir. 2012).

named plaintiff must independently establish venue." *Walsh v. Dollar Tree Stores, Inc.*, No. 25-CV-01601-SVK, 2025 WL 2939229, at *12 (N.D. Cal. Oct. 16, 2025) (internal quotation marks and citation omitted); *Sanchez Mora v. U.S. Customs & Border Prot.*, No. 3:24-CV-02430-TLT, 2024 WL 5378335, at *6 (N.D. Cal. Nov. 4, 2024) (collecting cases). *Walsh* is directly on point. There, in an analogous class action alleging improper placement of third-party cookies on defendant's website, the court dismissed two of the three named plaintiffs who resided in the Central and Southern Districts of California for improper venue, holding that the connections to the Northern District of the properly venued plaintiff could not satisfy the venue burden for the others. *See Walsh*, 2025 WL 2939229, at *12. The same analysis applies here with equal force.

Plaintiffs' argument concerning the propriety of the San Francisco Division also misses the mark. Intra-district case assignment in this District is governed by Civil Local Rule 3-2, which directs that cases be assigned to the division in which "a substantial part of the events or omissions which give rise to the claim occurred." N.D. Cal. Civ. L.R. 3-2(c). No Plaintiff asserts claims arising from events in the counties comprising the San Francisco Division.

**D. Plaintiffs Lack Article III Standing.**

Plaintiffs insist they meet the Article III standing requirement because their CCAC identifies the types of data allegedly disclosed to third parties via the Website or Online Access and the means of transmission through third-party software. Opp. at 5-6. Plaintiffs miss the point entirely. As the Ninth Circuit explained in *Popa*, "*TransUnion* contemplates a standing inquiry *particularized* to a plaintiff's circumstances and benchmarked to a specific tort." *Popa v. Microsoft Corp.*, 153 F.4th 784, 790-91 (9th Cir. 2025) (emphasis added). Describing how third-party software generally operates to purportedly collect information from unspecified users—whether based on counsel's post-hoc testing or otherwise, no matter how detailed—cannot substitute for the particularized inquiry involving Plaintiffs and their personal information. *See In re: USA Today Co., Inc., Internet Tracking Litig.,* No. 24-CV-05150-MMC, 2026 WL 932655, at *2 (N.D. Cal. Apr. 6, 2026) (finding no Article III standing where plaintiffs failed to identify specific personal information disclosed implicating protectable privacy interest).

No named Plaintiff alleges how his or her own specific information was intercepted by any

particular challenged software technology, in connection with any specific use of or communication with the Website or Online Access, or what specific information belonging to that Plaintiff was transmitted, when, and to whom. The very cases Plaintiffs rely on—*Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 908 (C.D. Cal. 2021), *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 480 (N.D. Cal. 2021), and *Griffith v. TikTok, Inc.*, 2023 WL 9019035, at *2-4 (C.D. Cal. Dec. 13, 2023)—demand precisely what Plaintiffs fail to provide, including that an injury be "concrete and particularized" and "affect the plaintiff in a personal and individual way."

**E. Plaintiffs Fail to State a Claim under CIPA § 631 and the ECPA.**

Plaintiffs' opposition rests on three flawed premises regarding the allegations in the CCAC: (1) that the alleged interception occurred while the contents were "in transit"; (2) that the "contents" of their communications were intercepted; and (3) that the crime-tort exception to the one-party consent rule applies. Each argument is legally and factually deficient.

*First*, Plaintiffs' opposition does not cure Plaintiffs' failure to plead any interception "in transit." The CCAC contains no allegations describing any specific interception of a specific Plaintiff's actual communication during transmission, when it occurred, what was captured in transit, or how any particular Plaintiff's data was routed to a third party before or simultaneously with its receipt by Defendants. Instead, the CCAC relies entirely on generalized, website- and portal-wide descriptions of how the challenged third-party software purportedly operate, while asserting that communications were "automatically" or "simultaneously" intercepted by third parties "in real time." CCAC ¶¶ 10, 199, 202, 215, 216, 217. That is precisely the kind of conclusory recitation of statutory language that courts in this Circuit have found insufficient. *See Esparza v. Gen. Digit. Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 2024) (allegation that communications were intercepted "in real time" was a "conclusory parroting of the statute"); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1085 (C.D. Cal. 2023) (same). Plaintiffs' attempt to distinguish *Hammerling* and *Esparza* is unavailing. The court in *Hammerling* held that allegations of "real-time data" collection do not plausibly allege interception "in transit" because "real-time data need not be collected in real time," and dismissed where the complaint failed to "allege any process by which [defendant] intercepts this data in transit." *Hammerling v. Google, LLC*, 2022

WL 17365255, at *10 (N.D. Cal. Dec. 1, 2022). *Esparza* similarly dismissed where the plaintiff "fail[ed] to allege specific facts about what was intercepted, when the interception took place, and how the interception took place." 2024 WL 655986, at *4. Plaintiffs' generalized "testing" and purported screenshots do not supply the missing allegations of "acquisition contemporaneous with transmission." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002).

*Second*, Plaintiffs do not dispute that they must plead interception of "content." Opp. at 6-7. Their authorities do not excuse that requirement. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020) rests on specifically alleged collection of search-engine URLs that "could divulge a user's personal interests, queries, and habits on third-party websites operating outside of [defendant]'s platform." *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1054 (N.D. Cal. 2025) rests on a single conclusory sentence—that personal information is content under CIPA—with no engagement with *Zynga*'s controlling analysis, which holds unambiguously that "content" refers to "the intended message conveyed by the communication," not "record information regarding the characteristics of the message." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106-07 (9th Cir. 2014). And *Casillas v. Six Flags Ent. Corp.*, 812 F. Supp. 3d 1016 (C.D. Cal. 2025) found content because the plaintiff alleged interception of data communicating the actual substance of what the user sought. Here, by contrast, no Plaintiff identifies what particular communication of theirs was intercepted, what specific data was captured, or why that data conveyed the "substance, purport, or meaning" of a communication. *See id.* at 1028.

*Third*, Plaintiffs do not dispute that the crime-tort exception requires an independent tortious purpose beyond the act of interception itself. But Plaintiffs' argument assumes the underlying conduct was tortious in the first place. Because Plaintiffs do not plausibly allege a wiretap violation, the exception has nothing to attach to. Moreover, the CCAC itself forecloses the exception with allegations that Defendants "intentionally incorporated Tracking Technologies" to "use the analytics and advertising services offered by these third parties to serve targeted advertisements . . . and, consequently, make more money." CCAC ¶ 50. This claimed financial motivation, coupled with Plaintiffs' failure to allege specific facts showing a tortious intent to injure Plaintiffs, precludes application of the crime-tort exception. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d

778, 797 (N.D. Cal. 2022); *In re Google Inc. Gmail Litig.*, No. 13-md-02430-LHK, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014).

**F. Plaintiffs CIPA § 632 Claim Remains Deficient.**

Plaintiffs' reliance on *Libman v. Apple, Inc.*, 2024 WL 4314791, at *13 (N.D. Cal. Sept. 26, 2024) and *Yockey v. Salesforce, Inc.*, 2024 WL 3875785, at *7 (N.D. Cal. Aug. 16, 2024) does not overcome the fundamental defect that software code is not an "electronic amplifying or recording device" within the plain meaning of § 632. *Libman* is not dispositive because the authorities on which it relies—including *Yockey*—invoked the specific definition of "device" based on cases interpreting the term in the federal Wiretap Act, which has no application here. This Court has previously observed that "[s]oftware . . . are not 'devices' within the meaning of CIPA because they are not 'equipment.'" *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019). Plaintiffs do not rebut this argument, nor do they meaningfully distinguish *Moreno*, which establishes that the term "device" refers to a physical object and does not encompass software.[3]

Plaintiffs' claim also fails because the communications at issue were not "confidential" within the meaning of the statute. The cases Plaintiffs cite involved materially different allegations, such as exact video-viewing information or information supplied while seeking medical services. *See Yoon v. Meta Platforms, Inc.*, No. 24-CV-02612-NC, 2024 WL 5264041 (N.D. Cal. Dec. 30, 2024); *L.B. v. LinkedIn Corp.*, No. 5:24-CV-06832-EJD, 2025 WL 2899514 (N.D. Cal. Oct. 10, 2025). They do not make information submitted through a website or online portal categorically confidential or excuse Plaintiffs from alleging an objectively reasonable expectation against recording. Here, Plaintiffs offer only the conclusory assertion that they expected the information to remain private, which courts have found insufficient. *See Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021) (dismissing § 632 claim).

**G. Plaintiffs' CIPA §§ 638.50 and 638.51 Claim Remains Deficient.**

Plaintiffs' opposition ignores the plain text and structure of CIPA § 638.51 and its supporting sections, which were enacted to regulate telephone surveillance—not internet activity—

[3] Although *Moreno* concerned § 637.7 claims, it is applicable here because it analyzed the general meaning of the word "device" and determined that "device" means "equipment."

and repeatedly reference "telephone lines" and "telephone numbers"—not websites or software technologies. CIPA § 638.52, for example, requires that any order authorizing a trap-and-trace device must identify the person "in whose name . . . the ***telephone line*** to which the pen register . . . is to be attached." *See* Mot. at 10-11 (emphasis added). The authorization framework reflects the Legislature's baseline conception of a pen register as telephone technology, and it makes no provision for authorizing one on a website or internet-based service. Plaintiffs' reading would criminalize routine website functionality such as collecting IP addresses or URLs and expose countless businesses to liability for standard internet practices, contrary to the Legislature's intent. *See Heiting v. HP Inc.*, No. 24STCV29634, 2025 WL 2993673 (Cal.Super. Aug. 01, 2025); *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194 (Cal.Super. Jan. 27, 2025).

Separately, Plaintiffs' contention that CIPA § 638.51 applies even where the software technologies capture "contents" collapses under the statute's own definitions. Pen registers and trap-and-trace devices, by definition, do not capture contents. Cal. Penal Code § 638.50(b), (c). Judge Wise squarely rejected Plaintiffs' attempt to avoid this boundary, holding that if software captures content it falls outside § 638.51 entirely, and if it captures only metadata such as IP addresses the plaintiff lacks a cognizable privacy claim. *See Mitchener v. CuriosityStream, Inc.*, No. 25-CV-01471-NW, 2025 WL 2272413, at *4 (N.D. Cal. Aug. 6, 2025); *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473-NW, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025). Plaintiffs' own cited legislative history—the A.B. 929 committee analysis—confirms that the "but not the contents" language was intended to subject content interception to a "much higher standard of scrutiny" under a separate statutory framework, and Plaintiffs' contrary reading simply cannot be squared with the statute's plain language.

### H. Plaintiffs Fail to State a Claim for Invasion of Privacy.

Plaintiffs rely on *Silver v. Stripe Inc.*, No. 4:20-CV-08196, 2021 WL 3191752, at *6 (N.D. Cal. July 28, 2021) and *Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 WL 1939957, at *10 (N.D. Cal. July 14, 2025), for the proposition that consumers have a reasonable expectation of privacy in financial data. Opp. at 12. But both cases are materially distinguishable. *Silver* involved undisclosed collection and sharing of comprehensive financial and behavioral

profiles compiled into reports with an assigned "Risk Score." 2021 WL 3191752, at *1-2, 6. *Gabrielli* involved tracking practices that persisted after the plaintiff clicked "Reject All." 2025 WL 1939957, at *1, 10. Both cases thus involved ongoing, covert interception and transmission of core financial account credentials and data, far beyond what any user could reasonably anticipate.

The CCAC describes a fundamentally different scenario. Plaintiffs' allegations center on routine technical data—page view events, URLs, IP addresses, cookie values, and user and device identifiers—the kind of information necessarily and knowingly transmitted to third parties as a basic condition of using the internet. Mot. at 13. Plaintiffs attempt to elevate their claim by gesturing toward account balances and transaction details, but as Defendants highlighted in their motion (Mot. at 13), those allegations are conclusory and untethered to the actual experience of any named Plaintiff on the Website or Online Access. *See* CCAC ¶¶ 137-146.

Plaintiffs' reliance on *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 865 (N.D. Cal. 2026) is also misplaced. Opp. at 13. *Krzyzek* involved secret tracking by a data broker with whom plaintiffs had no relationship. Plaintiffs' knowing, voluntary use of a financial services platform that deploys standard analytics and advertising software bears no resemblance to the covert, relationship-free tracking by an unknown intermediary that *Krzyzek* found potentially actionable.

**I. Plaintiffs Lack Statutory Standing Under the UCL and CDAFA.**

Plaintiffs' opposition does not justify their failure to allege a cognizable economic harm required for standing. Plaintiffs do not allege they intended to sell their data, attempted to do so, or were deprived of an opportunity to monetize it. Abstract assertions about generalized loss of control or value do not satisfy the UCL or CDAFA standing requirements. *See Shah*, 768 F. Supp. 3d at 1047-48 (N.D. Cal. 2025) (dismissing CDAFA and UCL claims where plaintiffs failed to allege they attempted or intended to participate in a market for information or derived economic value); *Cottle*, 536 F. Supp. 3d at 487-88 (rejecting theories based on loss of control, value, or protection of data as CDAFA "damage or loss"). The contrary cases Plaintiffs cite are factually inapposite or outliers that courts subsequently have declined to follow. *See*, *e.g.*, *Gerber v. Twitter, Inc.*, No. 4:23-CV-00186-KAW, 2024 WL 1354449, at *7 (N.D. Cal. Mar. 29, 2024).

Plaintiffs' second argument concerning Defendants' purported unjust profits fares no better.

A defendant's alleged misappropriation and monetization of data cannot establish standing absent a corresponding loss to the plaintiff. *Shah*, 768 F. Supp. 3d at 1048. Plaintiffs do not explain "how or why" they "suffer[ed] an economic loss every time their data [was] used and shared" and "whether [they] can still sell their data if [Defendants] already ha[ve] it." *Lineberry v. AddShopper, Inc.*, No. 23-CV-01996-VC, 2025 WL 551864, at *2 (N.D. Cal. Feb. 19, 2025). Plaintiffs invoke *Facebook Tracking* for disgorgement, Opp. at 13-14, but that case does not eliminate the UCL's independent requirement that a plaintiff suffer a loss of money or property.

Finally, Plaintiffs' assertion that they would have paid less, or not paid at all, had they known of the alleged disclosure of data is wholly conclusory and devoid of supporting facts—namely, what Plaintiffs paid, for what services, and what portion of those payments were supposedly privacy-related—and thus is not entitled to consideration at this stage.[4]

**J. Plaintiffs Fail to State a Viable Negligence Claim.**

Plaintiffs do not dispute that the economic loss rule applies where (as here) there is no "physical harm (i.e., personal injury or property damage)." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,* 903 F. Supp. 2d 942, 959-61 (S.D. Cal. 2012) (holding that economic loss doctrine bars claims of damages based on alleged exposure of plaintiffs' personal information, because such harms do not involve physical damage). Plaintiffs' cited cases do not establish an exception here. *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 913 (S.D. Cal. 2020) arose in a materially different context involving medical information disclosures. And Plaintiffs' reliance on *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1020 (N.D. Cal. 2024) is inappropriate because the defendant there insisted "that plaintiffs' injuries do not constitute the 'loss of money or property,'" *id.* at 1020, meaning that the issue was not truly before the court.

Plaintiffs next argue that the economic loss rule does not apply because Defendants' duty does not arise from any contractual obligation. Opp. at 14. This argument depends on the implausible premise that Plaintiffs Stevens and Frasher, who allegedly are longstanding Edward Jones account holders, had no governing contractual agreement with Defendants. Opp. at 14.

[4] This argument has no application to Plaintiff Shah, who as a non-client never paid for Defendants' services.

Plaintiffs cannot avoid the economic loss rule by characterizing duties arising from their longstanding Edward Jones account relationships as noncontractual while identifying no duty independent of those relationships. *See Terpin v. AT And T Mobility LLC*, 118 F.4th 1102, 1115-16 (9th Cir. 2024) (affirming dismissal of negligence claim where customer's alleged duty to protect account information arose from customer agreement); *Wright v. Charles Schwab & Co.*, No. 20-CV-05281-LB, 2020 WL 6822887, *3 (N.D. Cal. Nov. 20, 2020) (dismissing brokerage customer's negligence claim because brokerage agreement governed parties' relationship and plaintiff alleged no independent tort duty).

The CCAC offers no particularized allegations connecting any Plaintiff's own data to any specific interception by the challenged third-party software. Without those allegations, Plaintiffs cannot identify any "appreciable, nonspeculative, present harm" purportedly caused by the breach of Defendants' alleged duties. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1032 (N.D. Cal. 2012). The only harm Plaintiffs can point to is the generalized risk that their data may be misused in the future, which is precisely the kind of prospective injury that courts have found insufficient to support a negligence claim. *See Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010).

Plaintiffs' attempts to distinguish *Krottner*, *Pruchnick*, and *Low* are unavailing. All three stand for the proposition that "mere misappropriation of personal information" and generalized loss in data value are insufficient absent a concrete, realized harm, which Plaintiffs here fail to allege. *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021)

**K. Plaintiffs Fail to Allege Unjust Enrichment.**

Plaintiffs' unjust enrichment argument fails for two independent reasons. First, unjust enrichment is not a standalone cause of action. It is an equitable remedy, not a substantive claim. *See* Mot. at 15. Second, even if it were available, unjust enrichment requires that legal remedies be inadequate. Plaintiffs allege no facts showing that their legal remedies are insufficient. To the contrary, they seek damages under multiple legal theories. Where adequate legal remedies exist, equitable relief is unavailable. *See id.*

## III. <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Defendants' motion to dismiss.

Dated: July 27, 2026

K&L GATES LLP

By: */s/ K. Taylor Yamahata*
Michael J. Stortz
Tae H. Kim
K. Taylor Yamahata

*Attorneys for Defendants*

EDWARD D. JONES & CO., L.P. and THE JONES FINANCIAL COMPANIES, L.L.L.P.